QWEST COMMUNICATIONS
CORP., Plaintiff,

v.

THE CITY OF BERKELEY,
Defendant.

No. C 01–0663 SI.

United States District Court,
N.D. California.

April 7, 2003.

Peter A. Wald, Stephan E. Klein, Janis L. Workman, Randall T. Kim, Latham & Watkins, San Francisco, CA, David R. Goodnight, Dorsey & Whitney, LLP, Rita Latsinova, Dorsey & Whitney, LLP, Seattle, WA, for Qwest Communications Corporation, Plaintiff.

William M. Marticorena, Jeffrey Melching, Rutan & Tucker, Costa Mesa, CA, Manuela Albuquerque, Zach Cowan, Bruce Soublet, Berkeley City Attorney's Office, Berkeley, CA, for City of Berkeley, City Council of Berkeley, defendants.

Bruce A. Soublet, Zach Cowan, City of Richmond, Office of City Attorney, Richmond, CA, for Weldon Rucker, in his official capacity as Acting City Manager of the City of Berkeley, Phil Kamlarz, in his official capacity as Deputy City Manager of the City of Berkeley, defendants.

## ORDER GRANTING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ILLSTON, District Judge.

On January 3, 2003, the Court heard plaintiff's motion for summary judgment on Ordinance 6608–N.S., plaintiff's motion for summary judgment on Ordinance 6630–N.S., and defendant's motion for summary judgment. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS both of the plaintiff's motions and DENIES the defendant's motion for the reasons set forth below.

## BACKGROUND

Plaintiff Qwest Communications Corporation ("Qwest") is a telephone company defined as a public utility under California Public Utilities Code § 216. FAC, ¶ 4. The California Public Utilities Commission ("PUC") has granted Qwest certificates of public convenience and necessity ("CPCN") to provide interexchange, or long distance, telecommunication services. *Id.* Qwest provides broadband Internet-based data, voice and image connectivity to businesses, consumers and other communications service providers. *Id.* at ¶ 28.

In December 1999, Qwest won a competitive bidding process and entered into a government contract to provide faster and expanded telecommunications capacity to the Lawrence Berkeley National Laboratory ("LBN Laboratory"). *Id.* at ¶ 30. LBN Laboratory is the technical administrator and central hub of a program operated by the United States Department of Energy ("DOE") known as the Energy Sciences Network ("ESNET"). *Id.* at ¶ 21. The ESNET is a high-speed communication network that allows Depart-

ment of Energy researchers and collaborators throughout the nation access to a community of research facilities, resources and information. *Id.* at ¶ 22.

In order to upgrade LBN Laboratory's telecommunications capacity, Qwest must install a "local loop" between LBN Laboratory and Qwest's central system. *Id.* at ¶ 31. This involves constructing a conduit—"a pipeline of sorts"—through which fiber optic cable is strung. *Id.* at ¶ 32. Sometime in March 2000, Qwest began to formulate a construction plan to lay its conduit through public rights-of-way in the City of Berkeley ("City" or "Berkeley"). *Id.* at ¶ 32. Qwest met and communicated with city officials from April through December 2000 to negotiate an acceptable construction plan to encroach upon the City's public rights-of-way. *See id.* at ¶¶ 33, 35, 41–45. The parties were unable to agree, and Qwest consequently did not obtain the necessary permits to begin construction. Qwest claims that the City refused to process its application after July 10, 2000, pursuant to a *de facto* moratorium on telecommunications infrastructure construction pending enactment of an ordinance affecting installation of telecommunication services in Berkeley. *Id.* at ¶¶ 35–40.

On December 22, 2000, Berkeley enacted Ordinance No. 6608–N.S. (codified at Berkeley Municipal Code §§ 16.10 et seq.) ("Ordinance"), effective January 21, 2001. *Id.* at ¶ 46. On January 23, 2001, the City passed a Fee Schedule to accompany the Ordinance. *Id.* at ¶ 48. The Ordinance creates a comprehensive scheme intended "to more specifically regulate Telecommunications carriers providing telecommunications services using public rights of ways and other public property." Ordinance § 16.10.010 (attached at FAC, Ex. B).

The Ordinance applies to all telecommunications carriers seeking to encroach upon Berkeley's public rights-of-way to provide telecommunication services. Ordinance § 16.10.030. All carriers must first obtain registration and pay related registration fees, which must be updated annually. *Id.* at § 16.10.040; *see also* Fee Schedule 2–3 (attached at FAC, Ex. C). All carriers must also obtain a Special Telecommunications Permit pursuant to § 16.10.050 of the Ordinance and pay additional fees. *See also* Fee Schedule 3–4. Unless a carrier claims exemption under § 16.10.070, and the City affirmatively determines that an exemption does indeed apply, all carriers are subject to a franchise fee to provide telecommunications services using the City's public rights-of-way. *See also id.* 5–7.

Qwest filed this lawsuit against the City on February 13, 2001, seeking primarily to invalidate the new Ordinance and Fee Schedule pursuant to the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, and the "conflict with general laws" provision of the California Constitution. Cal. Const. art. XI, § 7. According to Qwest, Berkeley's Ordinance is preempted by the Federal Telecommunications Act of 1996 ("FTA"), 47 U.S.C. §§ 253(a) and (c); the California Public Utilities Code §§ 7901 and 7901.1; and California Government Code § 50030. Qwest also asserted claims of violations of the Fourteenth Amendment and Commerce Clause, brought pursuant to 42 U.S.C. § 1983; intentional interference with contractual relationship; ultra vires conduct; and a claim for declaratory judgment of its rights with respect to the City's Ordinance and Fee Schedule.

On May 23, 2001, this Court enjoined Berkeley from enforcing the Telecommunications Carriers Ordinance, Berkeley Municipal Code § 16.10 et seq. (Ordinance 6608), and its accompanying Fee Schedule, pending resolution of this lawsuit. The injunction was based in large part upon the Court's finding that the Ordinance cre-

ates barriers to entry in violation of § 253(a) that do not fall within the safe harbor provision of § 253(c). *Qwest Communications v. City of Berkeley ("Berkeley I"),* 146 F.Supp.2d 1081, 1098 (N.D.Cal. 2001). This Court also declined to exercise supplemental jurisdiction over Qwest's state preemption claim. *Id.* at 1101–02. Soon afterwards, Berkeley passed Resolution No. 61,102–N.S., adopting Ordinance No. 6630–N.S. and its accompanying Fee Schedule, to regulate telecommunications companies "pending resolution of the legality of the City's current telecommunication ordinance." FAC, Ex. D. ("Interim Ordinance").

Qwest finds fault with a number of provisions of this Interim Ordinance and Fee Schedule, and maintains that, like its predecessor, it imposes an unlawful "third tier" of regulation that is prohibited by both the FTA and California's telecommunications statutes. Accordingly, Qwest filed a first amended complaint challenging this Interim Ordinance and adding new claims. Qwest also added a new cause of action arising directly under § 253 of the FTA and included § 253 as a substantive basis for its cause of action under 42 U.S.C. § 1983. In an Order dated November 15, 2001, this Court dismissed Qwest's claim for relief under § 253, holding that no implied private right of action exists directly under that provision of the FTA. *Qwest Communs, Corp. v. City of Berkeley ("Berkeley II"),* 202 F.Supp.2d 1085 (N.D.Cal.2001).

Now before the Court are plaintiff's motion for summary judgment on Ordinance 6630, the Interim Ordinance; plaintiff's motion for summary judgment on Ordinance 6608, the original Ordinance; and defendant's motion for summary judgment.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts" so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49 (2d Cir.1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Air-*

*lines, Inc.,* 626 F.2d 759, 762–63 (9th Cir. 1980).

## DISCUSSION

### A. Plaintiff's motion for summary judgment on Ordinance 6608, the original ordinance

■ As a threshold matter, it is clear that whether Ordinances 6608 and 6630 constitute effective barriers to entry or are mere right-of-way management provisions is a question of law under *City of Auburn v. Qwest Corporation,* 260 F.3d 1160, 1172 (9th Cir.2001), *cert. denied,* 534 U.S. 1079, 122 S.Ct. 809, 151 L.Ed.2d 694 (2002). Plaintiff Qwest seeks summary judgment on Ordinance 6608, asserting that the Ordinance is void under the Supremacy Clause of the United States Constitution, because it is preempted by § 253 of the Federal Telecommunications Act.[1] On May 23, 2001, this Court issued a preliminary injunction against Berkeley's enforcement of Ordinance 6608. In that decision, the Court described Ordinance 6608 as follows:

> [Ordinance 6608] requires all telecommunications carriers seeking to install telecommunications facilities in or on Berkeley's public rights-of-way to undergo a thorough application and permit process. Ordinance § 16.10.030. The carrier must first obtain registration and pay an annual registration fee of $3,400. *See* Ordinance § 16.10.040; Fee Schedule. A Special Telecommunications Permit is also required of all carriers, along with a $2,000 permit fee per project. *Id.* at § 16.10.050. As with registration, fees are charged to reimburse the City for its costs in processing the permit applications. *Id.* at § 16.10.100. Unless the carrier satisfies the City that it is exempt from franchising under § 16.10.070, the carrier must further obtain a license pursuant to § 16.10.090 and execute a written franchise pursuant to Chapter 9.60 of the Berkeley Municipal Code for "the privilege of using" the City's public rights-of-way. *Id.* These requirements stand in addition to any other requirements imposed by federal, state or local law, including existing excavation and encroachment permits under Title 16 of the Berkeley Municipal Code. *Id.* at § 16.10.030(A)(6). After permission to proceed is granted, the Ordinance maintains regulations concerning the installation, maintenance, operation, removal and upgrade of any equipment or facilities installed, including record-keeping, reporting, insurance, indemnity, and financial requirements. *Id.* at §§ 16.10.250–300.

---

1. 47 U.S.C. § 253 provides, in pertinent part:

(a) In general: No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority: Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority: Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

(d) Preemption: If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

After all required information is disclosed, the City is required to provide reasonable advance notice to affected members of the public and hold a public hearing. *Id.* at § 16.10.080(B). A final decision is within the discretion of the City, which ultimately considers the following additional criteria: 1) the legal and technical ability of the carrier; 2) the capacity of the affected public right-of-way to accommodate the proposed encroachment and any ·further utility and telecommunications facilities; 3) the damage or disruption to public or private facilities, improvements, and aesthetics; 4) the public interest in minimizing the cost and disruption of construction within the public right-of-way; 5) the availability of alternate routes or locations for the proposed encroachment; 6) the aesthetic and blighting effect of any above-ground encroachment; and 7) convictions or findings by any governmental authority that the applicant has violated any law or ordinance. *Id.* at § 16.10.080(C). In addition, if a carrier is not entitled to exemption from the licensing and franchise requirements, the City further considers: 1) the service that the carrier will provide to the community and region, 2) the effect on public health, safety and welfare, and 3) "such other factors—as may demonstrate that the grant to use the PROW will serve the community interest." The "other factors" are never identified. *Id.* at § 16.10.110.

*Berkeley I,* 146 F.Supp.2d at 1097. Relying heavily on the Ninth Circuit's recent decision in *Auburn,* this Court concluded that:

> [T]he Ordinance imposes an onerous burden on any carrier which seeks entry into the telecommunications market in Berkeley. Except for the license and franchise requirements, all other requirements under the Ordinance are absolute prerequisites to entry. The license and franchise requirements, which are even more onerous, presumptively apply unless a carrier proves to the City's satisfaction that it is exempt. Taken individually, many of the requirements under the Ordinance "have the effect of prohibiting entry" of telecommunications services providers. Viewed in its totality, the Ordinance creates a substantial barrier to entry.

*Id* at 1098. As the Ninth Circuit stated in *Auburn* about § 253(a) and (c), "[t]he preemption is virtually absolute and its purpose is clear—certain aspects of telecommunications regulation are uniquely the province of the federal government and Congress has narrowly circumscribed the role of state and local governments in this arena." *Auburn,* 260 F.3d at 1175. Ordinance 6608 clearly intends to regulate the telecommunications carriers in a way that violates § 253, as its stated purpose is to "more specifically regulate telecommunications carriers providing telecommunications services." Ordinance § 16.10.010. As *Auburn* states, "a regulatory structure that allows a city to bar a telecommunications provider from operating in the city 'prohibits or has the effect of prohibiting' the company's ability to provide telecommunications services under [§ 253(a) ]." *Auburn,* 260 F.3d at 1176. This Court has already found at the preliminary injunction stage that this ordinance prohibits or has the effect of prohibiting Qwest's ability to provide telecommunications services under § 253, and the Court reaffirms this finding here. Therefore, the Court GRANTS plaintiff's motion for summary judgment on Ordinance 6608.

**B. Plaintiff's motion for summary judgment on Ordinance 6630, the interim ordinance**

Plaintiff also moves for summary judgment on Ordinance 6630, the interim ordi-

nance passed by the City of Berkeley pending resolution of Ordinance 6608. Ordinance 6630 has many of the same requirements in Ordinance 6608, but also has a Common Carrier Exemption Procedure, under which a company may prove to the City of Berkeley that it is a common carrier and, if it does so, may claim exemption from the regulations of the ordinance. Ordinance § 16.11.070(D). Plaintiff argues that these common carrier provisions of Ordinance 6630 are preempted by § 253(a), and that Ordinance 6630 is therefore invalid.

■ In this Court's April 29, 2002 Order denying plaintiff's motion for judgment on the pleadings on this issue, this Court stated "[t]his Court may well find, in the end, that the provisions of the Ordinances, taken together, create a substantial barrier to entry." *Qwest Communs, Corp v. City of Berkeley ("Berkeley III")*, 208 F.R.D. 288, 293 (N.D.Cal.2002). In deciding the motion for judgment on the pleadings, the Court was constrained by the pleadings:

> [G]iven the bar on consideration of extrinsic factual materials under Rule 12(c), this Court is left to rely solely upon the words of the Ordinances and the allegations in the pleadings. Berkeley denies every factual allegation made in the complaint related to the analysis under § 253(a). *While this might not matter were the Court deciding this issue at summary judgment,* because the Court is being asked to decide preemption in a Rule 12(c) motion by the plaintiff, factual averments disputed by Berkeley may not be accepted in this motion.

*Id.* at 293 (emphasis added). The decision of the Court to give the parties the opportunity to conduct discovery did not, as the City argues, establish a heightened standard of factual proof to determine Qwest's common carrier status.

The district court in *Qwest Corp. v. City of Santa Fe,* 224 F.Supp.2d 1305, 1316 (D.N.M.2002), stated "[i]nasmuch as the presence of such 'unfettered discretion' can be determined as a matter of law from the language of the local regulation itself, an extensive factual record is not necessarily required to support such a determination." However, this Court, in fairness to the parties, gave both parties the opportunity to conduct discovery in this case before making a determination on the validity of Ordinance 6630; this also gave the City an opportunity to submit evidence to show that the Ordinances fit within the safe harbor of § 253(c). The discovery produced by plaintiff, taken together with the extensive and cumbersome requirements of Ordinance 6630, make it clear to this Court that the Ordinance creates a significant barrier to entry under § 253.

The City is also mistaken when it declares that Qwest's asserted common carrier status is subject to factual disputes that preclude a grant of summary judgment. As this Court earlier stated, it is clear under *Auburn* that the question of whether this ordinance is preempted by federal law is a question of law; as in *Auburn* "there is no factual dispute about the activity conducted by Qwest, nor the applicability of the ordinances to its activity. Therefore, the controversy is essentially legal in nature." *Auburn,* 260 F.3d at 1172.

Berkeley asserts that Qwest is not a common carrier because: 1) it has not disclosed the rates, terms and services of the contract with LBNL; and 2) facts available to Berkeley indicate to it that the contract was not a common carrier offering. However, both the Federal Communications Commission and the California Public Utilities Commission have determined that Qwest is a common carrier. *See* Exhibit D (Mead Dep.) to Qwest's

 

Motion for Summary Judgment on Ordinance 6630 at 14:24–15:24; *see also* Exhibit B (Richeson Decl.) at ¶ 9; Exhibit K. Qwest has also produced evidence that it has recently offered the same rates, terms and conditions as the LBNL contract to NASA NREN, NASA NISSU, and DISA DREN. Exhibit C (Seidel Decl.) at ¶ 2–5. Furthermore, "[i]t is not an obstacle to common carrier status that [Qwest may] offer a service that may be of practical use to only a fraction of the population, .... [T]he key factor is that the operator offers indiscriminate service to whatever public its service may legally and practically be of use." *National Ass'n of Regulatory Utility Comm'rs v. FCC*, 525 F.2d 630, 642 (D.C.Cir.1976).

Moreover, it is not the arena of the City of Berkeley to determine the common carrier status of Qwest or any other communications provider. Section 253 allows the federal government and the states to regulate the telecommunications industry, which would include the common carrier status of the communications providers. Section 253(c) allows municipalities to regulate the rights-of-way, but Ordinance 6630 goes far beyond the regulation of rights-of-way, and allows the City of Berkeley to make determinations that are the province of the federal and state governments. Therefore, plaintiff's motion for summary judgment on Ordinance 6630 is GRANTED.

### C. Defendant's motion for summary judgment

As this Court has granted the plaintiff's motions for summary judgment on Ordinances 6608 and 6630, the Court DENIES as moot defendant's motion for summary judgment.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment on Ordinance 6608 is GRANTED, plaintiff's motion for summary judgment on Ordinance 6630 is GRANTED and defendant's motion for summary judgment is DENIED as moot.

**IT IS SO ORDERED.**