QWEST COMMUNICATIONS CORPORATION, Plaintiff

v.

MARYLAND–NATIONAL CAPITAL PARK & PLANNING COMMISSION, Defendant.

Civil Action No. RWT 07–2199.

United States District Court, D. Maryland.

May 16, 2008.

Brian Coleman, Drinker Biddle and Reath LLP, Washington, DC, David R. Goodnight, Stoel Rives LLP, Seattle, WA, Thomas W. Snyder, Stoel Rives LLP, Denver, CO, for Plaintiff.

Jared Michael McCarthy, The Maryland National Capital Park and Planning Commission Office of General Counsel, Riverdale, MD, for Defendant.

## MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

On August 17, 2007, Qwest Communications Corporation ("Qwest") filed a Complaint for Declaratory Relief against the Maryland–National Capital Park & Planning Commission ("M–NCPPC" or "the Commission"). The Complaint alleges that Qwest is a company that provides telecommunication services in Maryland, and that in "order to provide these services, it locates its telecommunications facilities on Commission property." Compl. ¶ 1. The Complaint does not describe the

nature of the telecommunications services provided by Qwest in Maryland[1] and does not provide a description of the Commission property at issue. The Complaint goes on to say that the "Commission regulates the use of property where Qwest maintains its facilities." *Id.* ¶ 2. It does not indicate, however, how the Commission regulates the use of the property or the nature of Qwest's facilities.

The Complaint alleges that "[d]uring a recent negotiation of Qwest's license agreement, the Commission insisted on charging non-cost based fees for use of its property [that] were over six-hundred percent (600%) higher than those previously sought by the Commission." *Id.* Qwest charges that the imposition of these non-cost based fees, and the discretion to annually increase the fees arbitrarily, is in conflict with federal law, including section 253 of the Federal Telecommunications Act of 1996, 47 U.S.C. §§ 151, *et seq.* (the "FTA"). Section 253(a) of the FTA provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." After asserting both federal question and diversity jurisdiction, Qwest requests the issuance of declaratory and other relief pursuant to 28 U.S.C. §§ 2201–02.

By way of background, the Complaint alleges that Qwest purchased in 1999 two conduits in the rights-of-way "operated" by the Commission that had previously been installed pursuant to a license agreement[2] between the Commission and American Communication Services of Maryland, Inc., d/b/a e.spire, later assigned to Xspedius Management Co. of Maryland, LLC (collectively referred to in the Complaint as the "Predecessor Franchisees").[3] Compl. ¶ 11. Qwest alleges that it utilized the conduits pursuant to a Network Services Agreement with the "Predecessor Franchisees," to whom Qwest allegedly paid the license fees required by the license agreement between the Commission and the "Predecessor Franchisees."

When the license agreement with the "Predecessor Franchisees" came up for renewal in September 2004, the Commission allegedly requested that Qwest enter into a new license agreement. Prior to the completion of negotiations, the Commission is alleged to have demanded that Qwest pay license fees owed for use of the rights-of-way under the "Predecessor Franchisees' license agreement." *Id.* ¶ 15. Qwest avers that, in March of 2007, it agreed to pay the disputed back-license fees under a reservation of rights, and that the Commission replied with a new draft license agreement which increased the fee from $4.20 to $26 per linear foot for each conduit. *Id.* ¶¶ 17–18.

Qwest asserts that the Commission's proposed license agreement violates section 253(a) of the FTA and that it is not saved by the provisions of section 253(c) which preserve the "authority of a State or local government to manage the public rights-of-way or to require fair and reason-

---

1. Qwest is one of the "Baby Bells" created following the breakup of AT & T. As a Baby Bell based in Colorado, it functioned as a regional telephone company, but has since branched out into a number of other services outside of its original geographical service area.

2. A copy of the license agreement has not been provided to the Court.

3. While Qwest utilized the term "Predecessor Franchisees" to refer to these entities, there is nothing in the Complaint that suggests that they were, in fact, franchisees in the common use of that term as reflecting generalized permission of a State or local government unit to utilize public rights-of-ways throughout a jurisdiction.

able compensation from telecommunication providers, on a competitively neutral and non-discriminatory basis, for use of public rights-of-way on a non-discriminatory basis, if the compensation required is publicly disclosed by such government." The Complaint also includes claims for unjust enrichment. *Id.* ¶¶ 30–34.

The Commission has moved to dismiss the Complaint. The matter has now been fully briefed and arguments were heard by the Court on January 8, 2008. In its motion, the Commission argues that (1) Qwest has failed to plead any statute, regulation or other legal requirement enacted by the Commission affecting its provision of telecommunication services; (2) Qwest has failed to plead any actions that may prohibit or have the effect of prohibiting the ability of any entity to provide interstate or intrastate telecommunication service; and (3) Qwest's other claims fail as they depend on a finding of preemption.

### *LEGAL STANDARD*

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999). In *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007), the U.S. Supreme Court recently declared the "retirement" of the long-cited "no set of facts" standard first announced in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(stating that "a complaint should not be dismissed for failure to state a claim unless it appears be-

yond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief").[4] The Court in *Twombly* looked instead to whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do," *id.* at 1964–65. Instead, "factual allegations must be enough to raise a right to relief above a speculative level." *Id.* at 1965. To put it another way, a court should not be required to use a divining rod to ascertain the necessary facts to state a cause of action.

No matter the standard used, the Court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson County,* 407 F.3d 266, 268 (4th Cir.2005). Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche,* 293 F.3d 726 (4th Cir.2002).[5]

---

**4.** The Court explained that this "no set of facts" standard should be taken to stand for the less remarkable proposition that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969 (citation omitted).

**5.** The purpose of requiring more than a "bald statement by plaintiff that he has a valid claim

[is] to prevent costly discovery on claims with no underlying factual or legal basis." *Migdal v. Rowe Price–Fleming Int'l Inc.,* 248 F.3d 321, 326 (4th Cir.2001)(commenting that "[c]onclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition" (internal quotation marks omitted)).

## THE FEDERAL TELECOMMUNICATIONS ACT

The stated purpose of the FTA is to "promote competition and reduce regulation." FTA, Pub.L. No. 104–104, pmbl., 110 Stat. 56, 56 (1996). It was designed to create a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector development of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R.Rep. No. 104–458, at 1 (1996)(Conf.Rep.), *as reprinted in* 1996 U.S.C.C.A.N. 124, 124; S.Rep. No. 104–230, at 1 (1996)(Conf.Rep.). Such a framework, Congress believed, would secure "lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." FTA, Pub.L. No. 104–104, pmbl., 110 Stat. 56, 56 (1996).

The Federal Communications Commission has interpreted broadly the preemptive thrust of section 253's prohibition of "other State or local legal requirements" that "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service":

> The use of this language also indicates that section 253(a) was meant to capture a *broad range of state and local actions* that prohibit or have the effect of prohibiting entities from providing telecommunications services.... A more restrictive interpretation of the term "other legal requirements" easily could permit state and local restrictions on competition to escape preemption

based solely on the way in which action was structured.

*In re Petition of Minnesota,* 14 F.C.C.R. 21697, 21707 (1999)(emphasis added)(stating that it "believe[s] that interpreting the term 'legal requirement' broadly best fulfills Congress' desire to ensure that states and localities do not thwart the development of competition").[6]

The Commission here argues that Qwest has failed to plead facts sufficient to demonstrate that its actions "may prohibit or have the effect of prohibiting" its ability to "provide any interstate or intrastate telecommunication service," as required under section 253(a). The Commission correctly points out that it has been established under the provisions of Article 28, §§ 1–101, *et seq.,* of the Annotated Code of Maryland as a special purpose state agency maintaining parks, and exercising certain planning functions, in Montgomery and Prince George's Counties. It is not a general local government unit and does not maintain a system of roads or public rights-of-way used by the traveling public, which typically are utilized for the installation of telecommunication lines. As developed at oral argument, it appears this case revolves around a single piece of parkland in Montgomery County over which some entity, the identity of which is not clear, previously acquired the right to construct some form of telecommunication lines by a prior agreement with the Commission. Apparently, that agreement has come to an end, and Qwest no longer has the right to use the land in question.

Montgomery County has a vast system of State and county roads, and is the highest population jurisdiction in the State of

---

6. On the other hand, the Ninth Circuit has observed that cases considering preemption under section 253 generally involve "telecommunications-specific ordinances enacted after 1996" and has questioned whether the statute even applies to ordinances not specific to telecommunications. *Qwest Corp. v. City of Portland,* 385 F.3d 1236, 1241–42 & n. 4 (9th Cir.2004), *cert. denied,* 544 U.S. 1049, 125 S.Ct. 2300, 161 L.Ed.2d 1089 (2005).

Maryland. Presumably, Qwest is able to utilize classic public rights-of-way in numerous other locations throughout Montgomery County. Qwest has brought this suit against a special purpose state agency that is not in the business of licensing the use of public rights-of-way, nor in the regulation of telecommunication facilities, which at one time licensed a stretch of its parkland to an unknown entity for use for an unknown period of time under unknown terms. Based on the extremely cryptic allegations of the Complaint and the factual proffers made at argument, there is considerable doubt whether the Commission's actions in this case (which will be presumed, for purposes of this decision, to amount to a "legal requirement" [7]) prohibit or have the effect of prohibiting the provision of telecommunication services.[8]

Under the standard recently enunciated in *Bell Atlantic Corp. v. Twombly,* while it may be conceivable the Commission's actions have had the effect of prohibiting a telecommunication service, the allegations of this Complaint appear to amount to no more than labels and conclusions and the formalistic recitation of the elements of a cause of action. As noted by the Supreme Court, "factual allegations must be enough to raise a right to relief above a speculative level." 127 S.Ct. at 1965. Here, the Court is left with only a divining rod, and something more is required to state a claim.

Accordingly, because the allegations of the Complaint fall far short of meeting the *Twombly* standard under the unique circumstances of this case, the Commission's motion to dismiss will be granted, with 30 days leave granted to Qwest to file an amended complaint in accordance with this Memorandum Opinion.

### ORDER

Upon consideration of Defendant Maryland–National Capital Park and Planning Commission's Preliminary Motion to Dismiss for Failure to State a Claim [Paper No. 4], the opposition and reply thereto, the arguments of counsel presented at the hearing conducted before the undersigned on February 8, 2008, and for the reasons stated in the accompanying Memorandum Opinion, it is this 16th day of May, 2008,

---

**7.** As already reviewed, the Federal Communications Commissions has urged a broad interpretation of the term "legal requirement." *See In re Minnesota,* 14 F.C.C.R. at 21707 (stating that "interpreting the term 'legal requirement' broadly best fulfills Congress desire to ensure that states and localities do not thwart the development of competition"). For purposes of the assumption made here, case law also supports this approach. *See also Qwest Commc'ns Corp. v. City of New York,* 387 F.Supp.2d 191, 194 (E.D.N.Y.2005)(holding that the terms of a franchise agreement itself (as well as the ordinance on which it was based) violated section 253(a) because it permitted the city to unilaterally revoke it and required waiver of legal challenges); *cf. TCG New York, Inc. v. City of White Plains,* 305 F.3d 67, 77–82 (2d Cir.2002)(holding that a city's entire franchise scheme was preempted by subsection 253(a) and then going on to conclude that even the terms of a proposed franchise agreement

were not saved by subsection 253(c)'s safe harbor).

**8.** Without deciding the issue, the Court must express considerable skepticism as to whether Congress, through its enactment of section 253 of the FTA, intended to, or could, bind every state, county, city, or other local government entity that owns land without regard to the nature of the land in question. In the name of "promot[ing] competition and reduc[ing] regulation," it is doubtful that Congress intended to burden all property, regardless of its nature, and it certainly would appear that section 253 may have been intended to be limited to public rights-of-way that are typically franchised to a variety of utilities and communications services providers. Yet, without more specific factual averments as to the nature of the land at issue here, such a broad conclusion need not be reached at this time.

by the United States District Court for the District of Maryland,

**ORDERED,** that Defendant Maryland–National Capital Park and Planning Commission's Preliminary Motion to Dismiss for Failure to State a Claim [Paper No. 4] is **GRANTED;** and it is further

**ORDERED,** that Plaintiff is granted leave to amend its Complaint in accordance with this Order and the accompanying Memorandum Opinion within thirty (30) days from the date of entry of this Order.