QWEST CORPORATION, a Colorado corporation, Plaintiff,

v.

CITY OF PORTLAND, an Oregon municipal corporation, Defendant,

The City of Ashland, an Oregon munic-

ipal corporation; The City of Happy Valley, an Oregon municipal corporation; The City of Keizer, an Oregon municipal corporation; The City of North Plains, an Oregon municipal corporation; The City of Pendleton, an Oregon municipal corporation; The City of Redmond, an Oregon municipal corporation; The City of Salem, an Oregon municipal corporation; The City of Springfield, an Oregon municipal corporation, Defendants in Intervention.

Civil No. 01–1005–JE.

United States District Court,
D. Oregon.

March 22, 2002.

Lawrence Reichman, John P. Nusbaum, Perkins Coie LLP, Portland, OR, David R. Goodnight, Yana D. Koubourlis, Dorsey & Whitney LLP, Seattle, WA, for Plaintiff.

Pamela J. Beery, Paul C. Elsner, Beery & Elsner LLP, Portland, OR, Kenneth A. Wittenberg, Portland, OR, for Cities of Ashland, Happy Valley, Keizer, North Plains, Pendleton, Redmond, Salem and Springfield.

Jeffrey Rogers, Benjamin Walters, Office of City Attorney, Portland, OR, Carl R. Neil, Jay W. Beattie, Lindsay, Hart, Neil & Weigler LLP, Portland, OR, Nicholas P. Miller, Joseph Van Eaton, Miller & Van Eaton, P.L.L.C., Washington, DC, for City of Portland.

William F. Gary, Jerome Lidz, Linda J. Kessel, Harrang Long Gary Rudnick, P.C., Eugene, OR, for Intervenor City of Eugene.

## OPINION AND ORDER

JELDERKS, United States Magistrate Judge.

Plaintiff Qwest Corp. claims that the Federal Telecommunications Act of 1996, 47 U.S.C. § 253, prohibits Oregon cities from collecting a percentage of Qwest's revenues in exchange for Qwest's use of public rights of way. The defendants are the Cities of Ashland, Eugene, Happy Valley, Keizer, North Plains, Pendleton, Portland, Redmond, Salem, and Springfield (the Cities). The Cities counterclaim for past-due fees that Qwest refuses to pay pending resolution of this lawsuit.

The parties have filed cross-motions for summary judgment. I grant the Cities' motions and deny Qwest's motions.

## BACKGROUND

For many years, Qwest and its predecessors [1] have used the Cities' public rights of way to provide telecommunications services. Qwest negotiated, and in some cases drafted, franchise agreements with the Cities. Under the current franchise agreements, Qwest has promised to pay each City 7% of gross revenues from telecommunications services in that City, in exchange for Qwest's use of public rights of way.[2]

In 1989, Qwest successfully lobbied for a state statute that allows Oregon cities to impose revenue-based "privilege taxes" of up to 7% on telecommunications carriers for use of the public rights of way. Or. Rev.Stat. § 221.515(1).[3] Only gross revenues from exchange access services are subject to the right-of-way privilege tax. Or.Rev.Stat. § 221.515(2).

In April 2001, the Ninth Circuit issued the initial opinion in *City of Auburn v. Qwest Corp.,* 260 F.3d 1160 (9th Cir.2001), cert. denied, —— U.S. ——, 122 S.Ct. 809, 151 L.Ed.2d 694 (2002). Based on its interpretation of the *City of Auburn* decision, Qwest brought this action and stopped paying revenue-based right-of-way fees to the Cities.

1. In this opinion, "Qwest" also refers to Qwest's predecessors, including U.S. West Communications and Pacific Northwest Bell Telephone.

2. The City of North Plains requires a 4% revenue-based fee.

3. The statute provides in part:
 The council of every municipality in this state may levy and collect from every telecommunications carrier operating within the municipality and actually using the

## STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). The court should resolve reasonable doubts about the existence of an issue of material fact against the moving party. *Id.* at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *Id.* at 630–31.

## DISCUSSION

### I. Preemption Under § 253

This case turns on the proper application of 47 U.S.C. § 253. Section 253, which is entitled, "Removal of barriers to entry," provides in relevant part:

(a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of

streets, alleys or highways, or all of them, in such municipality for other than travel, a privilege tax for the use of those streets, alleys or highways, or all of them, in such municipality in an amount which may not exceed seven percent of the gross revenues of the telecommunications carrier currently earned within the boundaries of the municipality. The privilege tax authorized in this section shall be for each year, or part of each year, that such telecommunications carrier operates within the municipality.

prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority

Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

■■■ When applying § 253, the court must first determine whether the challenged ordinances or franchise requirements "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). Even if local requirements do not expressly prohibit a telecommunications service, the requirements might be so burdensome that they effectively achieve the same result. *AT & T Communications of the Pac. Northwest, Inc. v. City of Eugene,* 177 Or.App. 379, 408, 35 P.3d 1029, 1047 (2001) (*City of Eugene*). The burden is on Qwest to show that § 253(a) bars the challenged requirements. *New Jersey Payphone Ass'n, Inc. v. Town of West New York,* 130 F.Supp.2d 631, 636 (D.N.J.2001); *In re TCI Cablevision of Oakland County, Inc.,* 12 F.C.C.R. 21396, 21440 (1997), *quoted in City of Eugene,* 177 Or.App. at 408, 35 P.3d at 1047.

■■ In its briefs and at oral argument, Qwest has relied on an incorrect, overly broad version of § 253(a)'s preemption test, which was unfortunately quoted in the *City of Auburn* opinion: "Section 253(a) preempts 'regulations that not only "prohibit" outright the ability of any entity to provide telecommunications services, but also those that *"may ... have the effect of prohibiting"* the provision of such services.'" *City of Auburn,* 260 F.3d at 1175 (emphasis added; original ellipses) (quoting *Bell Atlantic–Maryland, Inc. v. Prince George's County,* 49 F.Supp.2d 805, 814 (D.Md.1999), *vacated,* 212 F.3d 863 (4th Cir.2000)). The quoted phrase simply misreads the plain wording of the statute, and implies that the statute bars not only those local requirements that actually prohibit or have the effect of prohibiting the ability to provide telecommunication service, but also those local requirements that *may* have that effect. That is not what the statute says. The statute actually provides that no local requirements may:

(1) prohibit the ability to provide service, or

(2) have the effect of prohibiting the ability to provide service.

A correct reading of the statute shows that Congress used the word "may" as a synonym for "is permitted to": "No State or local statute or regulation, or other State or local legal requirement, may [i.e., is permitted to] prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). The *City of Auburn* opinion elsewhere recites the preemption test correctly. *See, e.g.,* 260 F.3d at 1176 ("The ordinances ... include several features that, in combination, have the effect of prohibiting the provision of telecommunication services.").

If the challenged requirements do not prohibit or have the effect of prohibiting

the ability of an entity to provide a telecommunications service, § 253 does not preempt the requirements and the court's inquiry is complete. *City of Eugene,* 177 Or.App. at 407, 35 P.3d at 1046. If, and only if, a requirement does prohibit or has the effect of prohibiting the ability to provide a telecommunications service, the court then must determine whether the requirement is protected by the safe-harbor provisions of § 253(b) or (c). *City of Auburn,* 260 F.3d at 1177.

## II. The Cities' Requirements Do Not Have the Effect of Prohibiting Qwest's Ability to Provide Any Telecommunications Service

■ Qwest has not shown that the Cities' revenue-based right-of-way fees, or other franchise requirements, have barred Qwest's entry into any markets. Qwest has managed to provide telecommunications services in the Cities for many years while laboring under the allegedly prohibitive right-of-way fees and other requirements. *See City of Dallas v. Metropolitan Fiber Systems of Dallas, Inc.,* Civ. No. 98–2128, 2000 WL 198104, at *5 (N.D.Tex. Feb.17, 2000) ("the ordinances in question could not have acted as a barrier to entry in violation of § 253 because MFS and Brooks were already in the market"); *City of Eugene,* 177 Or.App. at 410, 35 P.3d at 1048 ("it is not easy to understand how being required to satisfy a requirement that the companies … already have satisfied constitutes an effective prohibition of their ability to provide services"). Qwest has not pointed to a single telecommunications service that it, or any other entity, is effectively prohibited from providing because of the Cities' revenue-based fees or any of the other challenged requirements. *See BellSouth Telecommunications, Inc. v. City of Mobile,* 171 F.Supp.2d 1261, 1281 (S.D.Ala.2001) (§ 253(a) "speaks in terms of prohibition, not in terms of minor delays" that may be incurred in obtaining permits).

The franchise agreements and ordinances at issue here do not give the Cities unfettered discretion to deny telecommunications franchises, unlike the requirements struck down as barriers to entry in *City of Auburn.* 260 F.3d at 1176. Instead, the franchise agreements allow either party to terminate on 180 days' notice. As the court noted in *City of Auburn,* local authorities may retain the power to cancel or deny a franchise without necessarily running afoul of § 253(a). *Id.,* 260 F.3d at 1176 n. 11 (citing *TCG Detroit v. City of Dearborn,* 206 F.3d 618, 624 (6th Cir.2000) (*City of Dearborn* )).

Qwest also challenges the requirements imposed by some of the Cities that telecommunications service providers submit information about revenues, ownership, and placement of wires and equipment. None of these requirements bar entry or have the effect of prohibiting telecommunications services.

■ Qwest contends § 253(a) prohibits the Cities from basing right-of-way fees on Qwest's gross revenues. Qwest's argument depends on its erroneous presumption "that the only legitimate exercise of local regulatory authority under section 253(a) is the recovery of the costs of the use of local rights-of-way." *City of Eugene,* 177 Or.App. at 410, 35 P.3d at 1048 (rejecting this argument). Section 253(a) does not address revenue-based fees, much less categorically forbid them. *See City of Dearborn,* 206 F.3d at 624–25 (§ 253 does not preempt franchise fee equal to 4% of gross revenues). Section 253 preempts right-of-way fees only if the fees would effectively prohibit the provision of a telecommunications service. Even then, such fees would be authorized by § 253(c) if they qualified as "fair and reasonable compensation" for the use of rights of way.

In challenging revenue-based fees, Qwest relies on a statement from the *City of Auburn* opinion: "Some non-tax fees charged under the franchise agreements are not based on the costs of maintaining the right of way, as required under the Telecom Act." 260 F.3d at 1176 (footnote omitted). I agree with the Cities that when the *City of Auburn* opinion referred to "non-cost-based fees," it specified application fees, not right-of-way fees. *See City of Auburn*, 260 F.3d at 1179 n. 19. That is because in the *City of Auburn* litigation, the Ninth Circuit had no reason to address whether § 253 preempted the municipalities' 6% revenue-based "gross receipts tax." Qwest expressly conceded the tax's validity. 260 F.3d at 1176 n. 10 ("The parties agree that Washington law allows for a six percent gross receipts tax."); Cities' Mem. in Supp. at 14–15 (quoting Qwest's concession in the *City of Auburn* litigation that it was not challenging "ROW fees based on gross revenues"). Just as here, the Washington cities imposed the revenue-based fees because of Qwest's use of public rights of way. *See, e.g.,* Beery Aff., Ex. 23, at 5 (City of Auburn ordinance requiring "Franchise fee" for use of public ways "not to exceed six percent ... of Gross Revenues"). I see no legally significant distinction between the revenue-based right-of-way fees in *City of Auburn,* whose validity Qwest expressly conceded, and the fees at issue here.

■ In determining whether a city's right-of-way fees bar entry into a market, it makes little difference whether the city refers to the right-of-way charges as fees or taxes. The court should focus on a right-of-way fee's effects, not its label. In *City of Auburn,* the state statute referred to a "gross receipts tax," while several of the municipal ordinances referred to "franchise fees" or "rights-of-way fees." *See* Cities' Mem. in Supp., at 14 (quoting Tacoma and Auburn ordinances). Similarly, the Oregon legislature, in allowing Oregon

cities to impose revenue-based fees, referred to a "privilege tax." Or.Rev.Stat. § 221.515. I conclude that the *City of Auburn* decision does not stand for the proposition that § 253(a) categorically bars all revenue-based right-of-way fees.

Because Qwest has failed to show that any of the Cities' challenged requirements individually or in combination bar competition or have the effect of prohibiting any telecommunications services, Qwest's claims against the Cities must fail. Conversely, there are no issues of material fact regarding Qwest's liability to the Cities for the revenue-based right-of-way fees. I conclude as a matter of law that Qwest's failure to pay the fees breached its franchise agreements with the Cities. The only issues of material fact remaining concern the precise amounts due each City.

Because of these rulings, I will not address the Cities' argument that Qwest's requested relief would violate the Tax Injunction Act, 28 U.S.C. § 1341. *Cf. Qwest Communications Corp. v. City of Berkeley,* 146 F.Supp.2d 1081, 1093 (N.D.Cal. 2001) (municipality's right-of-way fees were "regulatory fees rather than taxes").

### III. Qwest's Challenge Is Barred by Claim and Issue Preclusion

■ There is an alternative reason for granting summary judgment for the Cities as to the 7% revenue-based fees. The Oregon Court of Appeals has rejected Qwest's challenge to the City of Eugene's telecommunications ordinance, upholding a 7% revenue-based fee for use of public rights of way. *US West Communications, Inc. v. City of Eugene,* 177 Or.App. 424, 37 P.3d 1001 (2001) (companion case to *City of Eugene* ). The Oregon court specifically held that § 253 did not preempt the City of Eugene's telecommunications ordinance.

■ The doctrine of claim preclusion bars Qwest from bringing a second challenge to the City of Eugene's 7% revenue-

based fee. The parties and relevant facts here are the same as those in the *City of Eugene* litigation. *See Rennie v. Freeway Transport,* 294 Or. 319, 323, 656 P.2d 919, 921 (1982) (requirements for claim preclusion under Oregon law). Claim and issue preclusion apply to state court rulings on federal preemption issues. *See Morgan Stanley Mortgage Capital Inc. v. Insurance Comm'r,* 18 F.3d 790, 792–93 (9th Cir.1994).

Similarly, issue preclusion bars Qwest from challenging the other Cities' revenue-based right-of-way fees. The issues at stake in the two actions are essentially identical, and Qwest had a fair opportunity to contest the issue in the prior litigation. *See State Farm Fire & Cas. Co. v. Century Home Components, Inc.,* 275 Or. 97, 103, 550 P.2d 1185, 1188 (1976) (requirements for issue preclusion, referred to as collateral estoppel, under Oregon law).

 Because claim and issue preclusion apply, I need not address the *Rooker–Feldman* doctrine, which provides that lower federal courts lack jurisdiction "to hear a case that would require the court to review a state court judgment, even if the case presents federal constitutional issues, and even if the state court judgment is not from the state's highest court." *Ahmed v. Washington,* 276 F.3d 464, 467 (9th Cir. 2001); *see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 & n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). I also need not address whether judicial estoppel bars Qwest's challenge to revenue-based fees here because of Qwest's concessions in the *City of Auburn* litigation. *See Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th

Cir.2001) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.").

## IV. Safe Harbor Provision Protects Revenue Based Fees

 The Cities' revenue-based fees would still be valid under the safe-harbor provision of § 253(c), even if § 253 preempted the other challenged requirements. Section 253(c) allows cities to impose regulations that "manage the public rights-of-way" and to "require fair and reasonable compensation" for the use of rights of way "on a competitively neutral and nondiscriminatory basis."

I disagree with Qwest's contention that Congress intended to limit "fair and reasonable compensation" to Qwest's actual cost of using the public rights of way. Congress could have expressly limited right-of-way fees to actual costs, but it did not do so. *See City of Dearborn,* 206 F.3d at 625 (" 'costs' and 'compensation' are not the same"). *See also BellSouth Telecommunications, Inc. v. City of Orangeburg,* 337 S.C. 35, 522 S.E.2d 804, 808 (1999) ("franchise fee equal to a percentage of the revenue generated is not inherently unfair or unreasonable"). For example, in 47 U.S.C. § 224, which regulates cable television providers' use of utilities' poles, Congress defines "just and reasonable rates" "in terms of recovery of additional costs borne by the utility in providing pole attachments." *City of Dearborn,* 206 F.3d at 624.

I conclude that the Cities' revenue-based fees are "fair and reasonable compensation" for Qwest's use of the Cities' public rights of way.[4] Qwest apparently consid-

---

4. In an appellate brief filed with the Second Circuit, the Federal Communications Commission expressed doubts whether § 253(c) allowed revenue-based fees. *See* Qwest's Mot.

to File Supp. Pleading, Ex. C, at 9 n. 5. The FCC has not, however, directly addressed the issue. In any event, the FCC's statements

ered 7% revenue-based fees reasonable when it sponsored the state statute allowing such fees. Qwest also willingly accepted such fees when it negotiated franchise agreements with the Cities. *See id.*, 206 F.3d at 625 (revenue-based fee was "fair and reasonable" partly because "TCG had agreed in earlier negotiations to a fee almost identical to what it was now challenging as unfair" (footnote omitted)).

 Even if I were to agree with Qwest that one or more of the Cities' non-fee requirements violates § 253(a), I would conclude that the Cities' fee requirements may be severed from any invalid requirements.[5] Oregon law favors severing the invalid provisions of an ordinance rather than striking down the entire ordinance. *See Advocates for Effective Regulation v. City of Eugene*, 176 Or.App. 370, 376, 32 P.3d 228, 231 (2001). The Cities' charters and ordinances show an express preference for severability. I conclude that even if some of the Cities' requirements were held to be preempted, the preempted requirements could be severed from the fees and other requirements without rendering the franchise agreements or ordinances impossible to enforce.

## V. Qwest Is Not Entitled to a Stay for Additional Discovery

Qwest contends that this court should stay its rulings on the parties' cross-motions for summary judgment and allow Qwest to conduct additional discovery. *See* Fed.R.Civ.P. 56(f) (court may deny summary judgment or order a continuance to allow opposing party to take discovery). I disagree that further discovery is necessary.

To obtain a stay pending discovery, Qwest must show that discovery

would uncover specific facts which would preclude summary judgment. *Maljack Prod., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 888 (9th Cir.1996). I conclude that preemption may be decided on the record before me as a matter of law, and that additional discovery is unnecessary.

## CONCLUSION

The Cities' motions for summary judgment (##72–2, 165–1, 172–1, 178–2) are granted. Qwest's motions for summary judgment (##8–1, 157–1) are denied.

---

about § 253(c) do not affect my interpretation of § 253(a).

**5.** Qwest apparently does not challenge charter provisions or ordinances for the Cities of Happy Valley, Keizer, and North Plains.