**PUERTO RICO TELEPHONE COMPANY, INC. Plaintiff**

v.

**MUNICIPALITY OF GUAYANILLA, et al. Defendants**

**No. 02–2165 SEC.**

United States District Court, D. Puerto Rico.

Sept. 18, 2003.

---

23. *See* 31 P.R. Laws Ann., § 5298.

Alfredo Acevedo–Cruz and Johanna M. Emmanuelli–Huertas, Esqs., Pedro Ortiz Alvarez Law Offices, Ponce, for Plaintiffs.

Luis F. Del Valle–Emmanuell, Esq., García & Fernández, San Juan, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Plaintiff in the above-captioned case filed a complaint (**Docket # 1**) challenging the constitutionality of an ordinance enacted by the Municipality of Guayanilla (the Municipality). The ordinance imposes on providers of telecommunication services a monthly charge for the use of public rights-of-way within the Municipality. Plaintiff, a telecommunication services provider affected by the ordinance, alleges that state and federal law preempt the municipal ordinance.

Plaintiff argues that Ordinance No. 14, Series 2001–02 (the ordinance), which establishes a monthly charge of five percent (5%) of Plaintiff's revenue for use of public rights-of-way, is illegal because it prohibits Plaintiff from providing telecommunication services within the Municipality, and is an unfair and unreasonable amount of compensation for the use of said public rights-of-way. Plaintiff also alleges that the ordinance violates the Puerto Rico Telecommunications Act, Law No. 213 of September 12, 1996, 27 P.R. Laws Ann. §§ 265 *et seq.* (Law 213). Plaintiff alleges that, pursuant to Law 213, municipalities must make their rights-of-way available to telecommunication companies, and furthermore, that municipalities are prevented from limiting or prohibiting telecommunication companies from offering their services at the intrastate or interstate level. Plaintiff also avers that the ordinance violates the Federal Telecommunications Act (Telecom Act), and in particular 47 U.S.C. § 253, which authorizes Plaintiff to construct its system over public rights-of-way.

Defendants, on the other hand, have moved to dismiss the complaint alleging that both Law 213 and the Telecom Act specifically authorize municipalities to charge fair and compensation for the use of their rights-of-way (**Docket # 4**). Plaintiffs have countered in their opposition by stating that the fees charged by the municipality are outside the scope of "fair and reasonable compensation" as defined under the relevant statutes (**Docket # 13**). Both parties cite several authorities in support of their positions. As will become evident through our discussion, the crux of the matter lies in the definition of "fair and reasonable compensation" under the statutes. In fact, the multiple District Courts that have confronted this issue have decisively split on the issue, and only one Circuit Court has made a holding applicable to this case. Furthermore, this is an issue of first impression in our Circuit. For these reasons, we shall engage in a comprehensive review of the opinions of other courts, and analyze them in detail.

## Standard of Review

In assessing whether dismissal for failure to state a claim is appropriate, "the

trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) *citing Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored."

*LaChapelle*, 142 F.3d at 508 (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). *See also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993). Yet courts must bear in mind that apart from allegations of civil rights or RICO violations, fraud, mistake or standing, which are not implicated here, "it is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000) (quoting *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992)) (internal quotation marks omitted). In so doing, "a plaintiff can make allegations *either* on the basis of personal knowledge or on 'information and belief.'" *Id.*

### Federal Preemption—Jurisdiction

A telecommunication services provider may bring a claim under the Supremacy Clause of the Constitution of the United States [1] asserting that Section 253 of the Telecom Act preempts a local ordinance. *Qwest Corporation v. City of Santa Fe, New Mexico*, 224 F.Supp.2d 1305 (D.N.M. 2002); *Qwest Communications v. City of Berkeley*, 146 F.Supp.2d 1081, 1090 (N.D.Cal.2001). Preemption occurs when Congress expresses a clear intent to preempt state or local law. Section 253 is a plain example of such an expression of congressional intent. *Qwest Corporation v. City of Santa Fe*, 224 F.Supp.2d 1305.

---

1. "This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

Section 253 provides in pertinent part that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). The Telecom Act was passed first and foremost to promote competition and reduce regulation of telecommunications providers. *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1170 (9th Cir.2001). It expressly preempts any state or local regulation, or other state or local legal requirement, that may prohibit or may have the effect of prohibiting any company's ability to provide interstate or intrastate telecommunications services. *Id.* at 1175.

For a local regulation to be preempted by Section 253, however, two sets of requirements must be met. *Qwest Corporation v. City of Santa Fe*, 224 F.Supp.2d 1305. The first set of requirements is the one stated in Section 253(a), and cited above. The second is embodied in the savings clause contained in Section 253(c), and states that nothing in Section 253 "affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, if the compensation required is publicly disclosed by such government." 47 U.S.C. § 253(c).

The First Circuit Court of Appeals has interpreted Section 253(c) of the Telecom Act as a safe harbor for the restrictions embodied in Section 253(a). *Cablevision of Boston, Inc. v. Public Improvement Commission of the City of Boston*, 184 F.3d 88, 98 (1st Cir.1999). In *Cablevision* the First Circuit held that Section 253(a) of the Telecom Act is aimed at those who might impede the open competition between providers of telecommuni-

cation services. *Id.* at 97. The First Circuit, however, determined that Section 253(c) operates to preserve local laws that might otherwise be preempted under section 253(a). *Id.* See also *TCG New York v. City of White Plains*, 305 F.3d 67 (2d Cir.2002) (holding that Section 253(c) of the Telecom Act is a savings clause). Thus, even if the ordinance might tend to prevent Plaintiff from providing telecommunication services, it can nonetheless be saved if it conforms to the limitations of Section 253(c) of the Telecom Act. Under section 253(c) of the Telecom Act, the only requirements to the municipality's right-of-way charge is that it be fair and reasonable, and that it be applied on a competitively neutral and nondiscriminatory basis.

When a municipal ordinance falls outside the scope of this savings clause, however, "[t]he preemption is virtually absolute and its purpose is clear—certain aspects of telecommunications regulation are uniquely the province of the federal government and Congress has narrowly circumscribed the role of state and local governments in this arena. Municipalities therefore have a very limited and proscribed role in the regulation of telecommunications." *Qwest Corporation v. City of Santa Fe*, 224 F.Supp.2d 1305 (citation omitted). Local regulations, therefore, must strictly conform to the narrow exceptions of the "safe harbor" provisions of Section 253. *City of Auburn v. Qwest Corp.*, 260 F.3d at 1170. Regulations that do not fall within these safe harbor provisions, are preempted. *Id.* at 1177.

### Commonwealth Law vs. Federal Law

Before we continue, we should compare the letter of the Commonwealth and the federal statutes, so as to insure that the Court does not delve into the issue of preemption unnecessarily. Law 213 specifically states that "municipalities ... may

charge reasonable fees for the use of its [sic] properties, rights of way and easements." 27 P.R. Laws Ann. 269g. This text is very similar to the above-cited savings clause created by Section 253(c) of the Telecom Act. Both sections specifically permit a municipality to charge a "reasonable fee" or a "fair and reasonable compensation" for the use of public rights-of-way. We understand that the meaning of these two phrases is indistinguishable. After all, Law 213 was created precisely in response to the Telecom Act of 1996. As such, it is most reasonable to assume that the allowance of a "reasonable fee" in Law 213 was intended to go hand in hand with the equivalent provision in the Telecom Act. Under these circumstances, we understand that the analysis to be made of the definition of what is a "reasonable fee" or a "fair and reasonable compensation" is identical under both Commonwealth and federal law. Accordingly, and in the absence of any Commonwealth precedent interpreting this particular section of Law 213, we will proceed to resolve this question on the basis of the existing federal case law.

## Competitively Neutral and Nondiscriminatory

Plaintiff has not alleged that the ordinance is not applied on a competitively neutral and nondiscriminatory basis. Indeed, Plaintiff has alleged that the ordinance seeks to establish a charge for the use of public rights-of-way to the providers of all telecommunication services. **Docket # 1** at ¶ 7. Plaintiff has not alleged that any other telecommunication provider in the Municipality is not subject to the ordinance. Thus, Plaintiff's claim can only prosper if the charge for the use of public rights-of-way is unfair and unreasonable under the relevant statutes.

## Fair and Reasonable Compensation

Plaintiff alleges that the Municipality's charge is illegal because it is not **based on any actual degree of physical use** of the public rights-of-way. In fact, Plaintiff is actually arguing in favor of an even stronger holding: that a fee is unreasonable if it is not based **on the actual costs** borne by the municipality due to the telecommunication services provider's use of the public rights-of-way. Plaintiff draws support from a series of cases which hold that, since revenue-based fees (fees which are calculated as a percentage of the provider's revenues) are not related to the municipality's increased costs due to the provider's use of the public rights-of-way, they are *per se* illegal, and are preempted by Section 253 of the Telecom Act. However, as an initial observation, Section 253(c) of the Telecom Act does not explicitly forbid revenue-based fees. Furthermore, as Defendants ably point out, the right of local governments to charge compensation for public rights-of-way may arguably entail recovery of a reasonable rent, in addition to recoupment of the extra costs incurred by the municipality as a consequence of the provider's use.

Herein, in fact, lies the basic disagreement between the several courts which have confronted this issue. Plaintiff cites several cases in support of its position. However, there is only one truly strong holding in favor of Plaintiff's specific position, although other District Courts have expressed, in *dicta*, their inclination to follow such an approach. In *XO Missouri, Inc. v. City of Maryland Heights*, 256 F.Supp.2d 987, 994 (E.D.Mo.), the district court held that revenue-based fees are impermissible under the Telecom Act. The court specifically stated that " to meet the definition of 'fair and reasonable compensation' a fee charged by a municipality must be directly related to the actual costs

incurred by the municipality when a telecommunications provider makes use of the rights-of-way." *Id.* The court in *XO Missouri* made reference to the fact that the Telecom Act does not require that the same single fee be imposed on all carriers in a given area, because such a requirement would ignore the different amounts of city rights-of-way each different carrier would be using to provide its services. *Id.*

However, we believe that the fact that the statute does not require that the same exact fee be imposed to all providers only has the effect of insuring that providers are not excessively charged for public rights-of-way which they are not **using, or using very little. Nonetheless, use is not necessarily equivalent to added costs to the municipality.** What the Telecom Act succeeds in doing, by not requiring that municipalities impose one single fee on all providers, is eliminate the possibility that a provider who had 10% of a particular market, and who used only 10% of the locality's public rights-of-way got charged for 50% of the fees, in parity with another provider who was cornering the other 90% of the market and using the other 90% of the rights-of-way. The crux of the disagreement between us and the court in *XO Missouri* lies in the fact that we believe there is a basic difference between requiring that the fees charged by the municipality be related to the **actual use** of the rights-of-way and requiring that those fees be limited to the **actual added costs** resulting from such use. We agree with the *XO Missouri* court that the Telecom Act requires that the fees charged by the municipalities be tied to the level of use, but we understand that the Act does not limit those fees to the recovery of the added costs, only.

Another case cited by Plaintiff in support of its position is *Bell Atlantic–Mary-land, Inc. v. Prince George's County, Maryland,* 49 F.Supp.2d 805 (D.Md.1999), vacated on other grounds by 212 F.3d 863 (4th Cir.2000). On that occasion, the district court held that "any franchise fees that local governments impose on telecommunications companies must be directly related to the companies' use of the local rights-of-way ..." *Id.* at 817. Even though the court was again referring only to the fees' relation to the use, it becomes clear from the rest of the opinion that the court meant to limit said fees to "a level that is reasonably calculated to compensate [the municipalities] for the costs of administering their franchise programs and of maintaining and improving their public rights-of-way." *Id.* The court made clear that such fees were not to include a charge of "rent" for the use of the rights-of-way, and "may not serve as general revenue-raising measures." *Id.*

However, apart from the issues discussed above with respect to the court's similar holding in *XO Missouri,* there is another problem with Plaintiff's reliance on *Bell Atlantic.* Said opinion was vacated on other grounds by the Court of Appeals for the Fourth Circuit. *Bell Atlantic,* 212 F.3d 863. In its Opinion, the circuit court explained that the district court had erred in addressing the issue of preemption (which is considered a constitutional issue in the Fourth Circuit) prior to resolving certain state law issues which could have proved dispositive of the case. *Id.* While the circuit court, accordingly, did not reach the issue of the definition of "fair and reasonable compensation," its opinion had the effect of **vacating** the district court's prior opinion. As such, the holding in *Bell Atlantic,* 49 F.Supp.2d 805, is no longer good law. Nonetheless, we have chosen to discuss said opinion because it may still be considered persuasive in our

analysis.[2]

Plaintiff also cites *City of Auburn,* 260 F.3d 1160, in support of the proposition that the fees must be limited to recoupment of costs. However, the Ninth Circuit court held no such thing. In its opinion, the court invalidated a municipal ordinance because it established requirements on the service providers which went beyond the "management of the public rights-of-way" and were so onerous that they had the effect of prohibiting the provider from offering its services. *Id.* Nonetheless, the court never addressed the validity of a fee, by itself. It merely intimated that it might find non-cost-based feed objectionable in passing in a footnote which cited several other requirements which it thought it might also find objectionable. *Id.* at n. 19. This statement constitutes highly unpersuasive *dicta.* As such, we find that this case is inapposite to the issue before us.[3]

Plaintiff also points to *AT & T Communications of the Southwest, Inc. v. City of Dallas,* 8 F.Supp.2d 582 (N.D.Tex.), as supporting its position. However, the holding in said case falls short of the very strong holding that Plaintiff requires of this Court. On that occasion, the district court held that "the City does not have the authority to impose fees on a telecommunications provider except as compensation for use of the City's rights-of-way." *Id.* at 593. Again, the court is referring to the relationship between the fee and the actual use of the rights-of-way. **However, no reference is made to a necessary limit on the fee charged to recoupment of added costs.** Furthermore, even though the court in *City of Dallas* struck down a revenue-based fee, it did so because the provider was required to pay a percentage of its gross revenues **from all of its activities in Dallas.** *Id.* Of course, the relationship between some of those sources of revenue and the actual use of the rights-of-way was not established. Therefore, *City of Dallas* stands for the proposition that a fee that is not based on the provider's use of the rights-of-way violates the Telecom Act. However, it states nothing regarding a limit on said fees corresponding to the added costs.[4] In fact, the Court unequivocally stated that "[i]t [was] not necessary for the [c]ourt to determine at [that] time

2. There is another case which supports Plaintiff's argument. However, the court's expressions in that occasion were not part of the holding of the case. In *New Jersey Payphone Association, Inc. v. Town of West New York,* 130 F.Supp.2d 631(D.N.J.2001), the district court explained, in *dicta,* that it found persuasive other courts' reading of "fair and reasonable compensation" limiting municipalities to recoupment of costs directly incurred through the use of the public rights-of-way. *Id.* at 638. The court further stated that "a fee that does more than make a municipality whole is not compensatory in the literal sense, and risks becoming an economic barrier to entry." *Id.* Since these expressions were only done in passing, as *obiter dicta,* and without extensive analysis, we do not find them particularly persuasive.

3. A somewhat similar situation arises with respect to the Court's holding in *Peco Energy*

*Company v. Township of Haverford,* 1999 WL 1240941 (E.D.Pa.1999). In that case, the Court held that a revenue-based fee was not entitled to protection under the safe harbor provision of Section 253(c). However, the holding was made in the context of an extremely vague ordinance which failed to specify the amounts to be charged, and had not been published, as specifically and explicitly required by the Telecom Act. Under these circumstances, the analysis done by the district court of the specific issue of whether revenue-based fees should be ruled to be *per se* illegal was indeed quite limited. This leads us to lend little credence to the bare holding made in *Peco.*

4. The same is the case regarding the court's holding in *BellSouth Telecommunications, Inc. v. City of Mobile,* 171 F.Supp.2d 1261 (S.D.Ala.2001).

what *would* constitute a reasonable fee for the use of rights of way." *Id.* (emphasis in original). As such, we do not believe that this case necessarily requires a finding in favor of Plaintiff in the case before us, at this juncture.

Lastly, Plaintiff cites another case which, after carefully analyzing the courts' expressions, we believe lends better support to Defendants' argument than Plaintiff's. In *Qwest Corp. v. City of Santa Fe,* 224 F.Supp.2d 1305, the court held that "the compensation required by a local government must directly relate to actual use of local rights-of-way." *Id.* at 1327. The court, however, went on to make the exact same distinction that we advanced earlier between requiring that the fee be related to actual use and limiting said fee to recoupment of costs: "It does not necessarily follow, however, that cost-recovery is the only type of compensation that directly relates to actual use of local rights-of-way. If Congress had intended to limit local governments to charging cost-based fees for the use of public rights-of-way, Section 253(c) of the federal statute would have used the word 'costs' instead of the word 'compensation.'" *Id.* The court then went on to cite approvingly a case which will be discussed later which held that it was appropriate to permit a city to charge "rent" for the use of the rights-of-way, and applied the "totality of the circumstances" test developed by that court. *Id.* It further explained that "[u]nder this type of analysis, it is possible for a revenue-based fee to be fair, reasonable, and non-prohibitory ..." *Id.* In other words, the court in this case rejected the *per se* illegality of a revenue-based fee.

The case cited approvingly by the court in *Qwest Corp. v. City of Santa Fe* is, in fact, the only case decided by a Circuit Court which has squarely addressed the issue now before us. In *TCG Detroit v.*

*City of Dearborn,* 206 F.3d 618 (6th Cir. 2000), the Court of Appeals for the Sixth Circuit upheld the lower court's determination that "fair and reasonable compensation" under Section 253(c) may include a reasonable "rent" for the use of the public rights-of-way. The circuit court conclusively stated that the "totality of the circumstances" approach followed by the district court was appropriate, and that "[t]he court's examination of this question was thorough and its reasoning sound." *Id.* at 625. Bearing the circuit court's wholehearted approval in mind, let us take a look at the district court's opinion.

The district court in *TCG Detroit v. City of Dearborn,* 16 F.Supp.2d 785 (E.D.Mich. 1998), upheld a 4% revenue-based fee for the use of public rights-of-way, finding it both fair and reasonable. The district court held that a determination of what is "fair and reasonable compensation" should be made by examining the totality of the circumstances in the case. *Id.* at 789. The court identified four non-exclusive factors which it believed relevant to whether the fees imposed on the providers of telecommunication services for use of public rights-of-way were appropriate: 1) the amount of rights-of-way use contemplated, 2) whether other providers had agreed to comparable compensation, 3) the course of dealings among the parties, and 4) whether the compensation sought is "so excessive that it is likely to render doing business unprofitable." *Id.* at 789–791. More importantly, the court explicitly held that "there is nothing inappropriate with the city charging compensation, or 'rent,' for the City owned property that the Plaintiff seeks to appropriate for its private use." *Id.* at 789.

Further support to Plaintiff's argument is lent by *TCG New York, Inc. v. City of White Plains,* 125 F.Supp.2d 81 (S.D.N.Y. 2000), *aff'd in part and rev'd in part on*

*other gorunds* by 305 F.3d 67 (2d Cir.2002) (refusing to address the issue of "fair and reasonable compensation" and not vacating the lower court's opinion). On that occasion, the district court concluded that a reading of the word "compensation" which limits it to a recovery of reasonable costs may " 'too severely limit the term' because such a reading would treat § 253(c) as if it permitted recoupment of 'costs' rather than gaining of 'compensation.' " *Id.* at 95 (citations omitted). " 'Moreover, the term 'compensation' has long been understood to allow local governments to charge rental fees for public property appropriated to private commercial uses.' " *Id.* (citations omitted). Thus, the court found nothing unreasonable with cities charging "rent" for the use of city-owned property for private purposes, as long as such rent is "fair and reasonable." *Id. See also BellSouth Telecommunications, Inc. v. City of Orangeburg,* 337 S.C. 35, 522 S.E.2d 804 (S.C.1999). The court then went on to apply the *City of Dearborn* factors discussed above.

A similar approach was followed by the court in *Qwest Corp. v. City of Portland,* 200 F.Supp.2d 1250 (D.Or.2002). In that case, the court upheld an ordinance which established revenue-based fees under the safe harbor provision of Section 253(c). *Id.* The court disagreed with the plaintiff's contention that Congress intended to limit "fair and reasonable compensation" to the actual cost of using the public rights-of-way. *Id.* at 1258. "Congress could have expressly limited right-of-way fees to actual costs, but it did not do so." *Id.*

Finally, we should note that yet another court reached the same conclusion, albeit in *dicta,* by analyzing the meaning of the word "compensation" in a way similar to the *City of White Plains* court. In *Omnipoint Communications, Inc. v. The Port Authority of New York and New Jersey,* 1999 WL 494120 (S.D.N.Y.1999), the district court again differentiated between the meaning of the words "costs" and "compensation." *Id.* at *6. The court also made reference to the fact that local governments have traditionally been allowed to charge rental fees for the use of public property by private enterprises. *Id. citing City of St. Louis v. Western Union Tel. Co.,* 148 U.S. 92, 99, 13 S.Ct. 485, 37 L.Ed. 380 (1893). Based on this, the court stated that it was "doubtful that Congress, by use of the words 'fair and reasonable compensation,' " limited local governments to recovering their reasonable costs. *Id.*

Having reviewed all of the case law interpreting the "fair and reasonable compensation" provision of Section 253(c), we believe that the majority of the courts which have made express holdings on this issue, **including the only Circuit Court to have done** so, have favored a more ample definition of the terms. We understand that the most favored interpretation requires that the fees charged by a municipality be related to the degree of actual use of the public rights-of-way, but need not be limited to recoupment of the added costs to the municipality resulting from such use. We, therefore, favor an approach which does permit a municipality to obtain a reasonable "rent" for the use of its property.

However, not only do we find that the cited case law in favor of Defendants' argument is more persuasive, but we also find that our independent analysis of the situation leads us to that same conclusion. This Court believes that the main thrust of the Telecom Act's limit on a municipality's fees to what amounts as a "fair and reasonable compensation" is that of ensuring that a municipality does not engage in pricing which would effectively hinder the development of a competitive and efficient market for telecommunication services.

As mentioned earlier, the Telecom Act was passed first and foremost to promote competition and reduce regulation of telecommunication services providers. *City of Auburn*, 260 F.3d at 1170. As such, it is logical to think that any limitation on the municipality's power to charge for the use of its property was intended to thwart any attempt to engage in conduct which might be detrimental to the free competition between telecommunication services providers. It is unreasonable to interpret, on the other hand, that the Telecom Act was intended to force local governments to allow providers to use their property for free. Such an outcome would effectively create a municipal subsidy in favor of the providers. This is so because, even though the interpretation of Section 253(c) suggested by Plaintiff allows the municipality to recover the **actual out-of-pocket costs** of permitting the use of the public rights-of-way by the providers, it fails to allow the municipality to recover the **opportunity costs** of such use. These opportunity costs are nothing other than the "rent" for the use of the rights-of-way which could otherwise be obtained by the municipality.

We believe that the approach taken by the cases cited by Plaintiff in favor of its position are anchored on a fundamentally flawed concept of market value which has lately arisen in some circles as an outgrowth of the law and economics movement. The rub lies in the fact that, by limiting compensation to the out-of-pocket costs, the approach is only taking into account the supply-side component of the property right's value. The market value of a good, however, is not only determined by the supply-side (i.e. the cost of producing it), but also by the demand-side, or the amount that someone is willing to pay for the good. By not taking into account the opportunity costs of renting the municipality's property to the providers for free, this approach is effectively redistributing the resources, and transferring the municipality's property rights to the providers. Such an outcome is not only inherently unfair to the municipality, but it could also lead to the mis-allocation of resources, as inefficiencies could result from overuse of the rights-of-way, or the use of those rights-of-way by less efficient service providers.

■ Of course, we still believe, as the opinions cited by Defendants also hold, that a municipality's fees must be limited to an amount which is fair and reasonable, and which is directly related to the actual use of the rights-of-way by each provider. We must remain aware that the municipality's ownership of the rights-of-way places it in a prime position from which to engage in monopolistic or discriminatory pricing. Such a result would also be highly inefficient, and perhaps more importantly, would be extremely detrimental to the free competition which is the ultimate goal of the Telecom Act. As such, courts have a duty to insure that any fees charged by a municipality only include amounts which 1) serve to recoup out-of-pocket expenses resulting from the use of the rights-of-way and, 2) constitute a reasonable rent for the use of said rights. In addition, courts must make sure that such fees are levied in proportion to each provider's degree of actual use of the rights-of-way, so as to avoid any type of discriminatory pricing.

■ Now, we do not find that a revenue-based fee is inherently incapable of obtaining results consistent with the above requirements. Therefore, we believe that it is not wise to establish that such fees are *per se* illegal. In fact, a revenue-based fee, if based on the appropriate sources of revenue, might be a very good measure indeed of the provider's actual use of the rights-of-way. On the other hand, such a fee may not be based on revenue which is

unrelated to such use, and may not serve to subject the provider to multiple liability for the same activities.

 Therefore, in the present case, the fee of 5% of gross revenues will not be held *per se* illegal. Plaintiff, however, also claims that the 5% fee on gross revenues is overbroad. Plaintiff avers that the ordinance includes in its definition of gross revenues all of the following: 1) revenue from calls within the Municipality; 2) revenue from calls originated from a phone within the Municipality and received elsewhere; and 3) revenue from calls originated elsewhere and received within the Municipality. Plaintiff argues, and we agree, that such a measure of gross revenues could subject them to double liability if other municipalities decide to establish the same type of fee. As such, we hold that the Municipality may only base its fee on gross revenue from calls originated within the Municipality, regardless of where they might be received. In such a manner, calls may only be counted once, and the revenue from such calls will only be considered in the calculation of the fee by one municipality.[5]

 Furthermore, the Court finds that there might very well be an issue of fact as to the reasonableness and fairness of the fee of 5% of gross revenues, even as redefined by the Court above. It might very well be the case that such an amount could encompass a "rent" payment which is unfair to Plaintiff, inherently hinders the development of an efficient and competitive market, and has the effect of prohibiting Plaintiff from offering its services, in violation of Section 253(a) of the Telecom Act

and Law 213. Since the parties are yet to present any concrete evidence on the fairness of the price being charged (the record does not even show exactly what amount is 5% of Plaintiff's gross revenues), the Court will not enter Judgment for either party at this time. Discovery must bear its fruits.

 Lastly, Plaintiff also contends that the record-keeping requirements imposed by the ordinance are so burdensome as to have the effect of prohibiting Plaintiff from offering its services, in violation of Section 253(a) of the Telecom Act and Law 213. Furthermore, they argue that such requirements intend to impermissibly regulate the telecommunication services providers, instead of managing the rights-of-way as permitted by exception under Section 253(c). However, the only requirement imposed by the Municipality, so far, is that Plaintiff provide copies of its monthly billing statements, so as to be able to calculate the fee of 5% of gross revenues. Having reviewed the case law regarding this issue, we find that this simple requirement does not come even close to being overly burdensome under Section 253(c). Consequently, the Court will not declare such a requirement illegal, either.

### Conclusion

For all the reasons discussed above, Defendants' motion to dismiss is **DENIED**. However, Plaintiff's request that the Court enter a declaratory judgment in its favor is also **DENIED**. The Court finds that the Ordinance, and the fee of 5% of gross revenues imposed by said Ordinance, are not *per se* illegal. The parties shall continue to conduct discovery in this case and

---

5. The Court is also somewhat concerned with the possible interaction between this fee of 5% of gross revenues and the imposition of municipal license taxes (patentes municipales) based on those same gross revenues. The parties should be prepared to address this issue during trial, so that the Court may consider whether the imposition of both the fee at issue in this case and a municipal license tax might subject the providers to double liability in a way which is unfair and unreasonable.

shall litigate the specific issue of whether the amount of the fee is reasonable and fair compensation under the Telecom Act and Law 213, as interpreted by the Court in this Opinion and Order. The Court will also issue a Case Management Order forthwith.

**SO ORDERED.**