Argued and submitted January 22, reversed and remanded for entry of judgment
in favor of City of Eugene October 31, 2001

## US WEST COMMUNICATIONS, INC.,
*Respondent,*

*v.*

## CITY OF EUGENE,
an Oregon municipal corporation,
*Appellant.*

16-98-01463; A105859

37 P3d 1001

William F. Gary argued the cause for appellant. With him on the briefs were Linda J. Kessel and Harrang Long Gary Rudnick P.C.

Lawrence H. Reichman argued the cause for respondent. With him on the brief were Elizabeth Schwartz and Perkins Coie LLP.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

US West Communications, Inc. (US West), initiated this action for declaratory and injunctive relief, challenging the validity of a telecommunications ordinance enacted by the City of Eugene (city). The company argued that the ordinance is preempted by one or more of a number of different state and federal laws. The trial court agreed and entered summary judgment for US West. The city appeals, and we reverse and remand.

The facts pertaining to the adoption of the challenged ordinance are set out in *AT&T Communications v. City of Eugene*, 177 Or App 379, 381-84, 35 P3d 1029 (2001). Additional facts pertinent to this appeal are as follows.

US West is a telecommunications utility that provides a variety of telecommunications services to individuals and businesses in the city. Those services include local exchange access services as well as nonexchange access services such as call forwarding, call waiting, and caller identification. It uses city rights-of-way to provide some of its services. Since 1990, US West has been authorized to use those rights-of-way by a franchise agreement. The agreement is terminable by either party on 30 days' notice; otherwise, it is scheduled to expire in 2005.

As described in detail in *AT&T Communications*, the city enacted a telecommunications ordinance in 1997 that requires all those who intend to provide telecommunications services within the city to complete a registration application and to pay a registration fee, including an annual fee equal to two percent of the provider's "gross annual revenues" from telecommunications activities within the city. Eugene Code (EC) § 3.405(1); EC § 3.415(1). If providers use city rights-of-way, they are also required to complete an application demonstrating their legal, financial, and technical capabilities and must pay a license fee equal to seven percent of gross annual revenues. EC § 3.410(1); EC § 3.415(2). "Gross annual revenues" is defined as "[a]ny and all revenue, of any kind, nature or form, without deduction for expense." EC § 3.005. The ordinance exempts any providers who currently operate under a franchise agreement with the city. EC § 3.410(6).

The ordinance also expressly contemplates that state or federal law may limit the extent to which the city may charge telecommunications service providers. In that regard, it provides:

"To the extent that federal or state law, or an existing franchise agreement, limits the amount of fees which the City may impose on, or the compensation it may require from, an operator, nothing in this section shall require the payment of any greater amount, unless and until the federal or state limits are raised, or the franchise agreement expires or is otherwise terminated."

EC § 3.415(4).

After the city enacted its ordinance, it informed US West that it was in violation because of the company's failure to pay, among other things, a registration fee. US West then initiated this action, challenging the validity of the ordinance and, in particular, the registration and licensing fee requirements. According to US West, the city's telecommunications ordinance is preempted by:

(1) ORS 221.515, which limits any right-of-way taxation to seven percent of gross annual revenues derived from exchange access services after deducting net uncollectibles;

(2) ORS 307.215, which prohibits the imposition of a local government tax on amounts paid for telecommunications services;

(3) ORS chapter 759, which authorizes the Public Utility Commission (PUC) to regulate telecommunications services in the state; and

(4) 47 USC § 253(a) (Supp 2001), which forbids state or local governments from enacting regulations that "may prohibit or have the effect of prohibiting the ability of any entity to provide * * * telecommunications service."

The city counterclaimed for US West's failure to pay the required registration and license fees. The parties both moved for summary judgment. The trial court granted US West's motion on its claims and against the city's counterclaims and denied the city's motions on the same claims and

counterclaims. The city then voluntarily dismissed one of its counterclaims for failure to pay the license fee, and the trial court entered judgment for US West on all remaining claims and counterclaims.

On appeal, the city begins by challenging the ripeness of US West's claims concerning validity of the license fee. According to the city, because the company currently is licensed under a franchise agreement, the right-of-way licensing provisions of the ordinance do not apply. US West counters that the city is foreclosed from asserting a ripeness argument because it did not do so below; indeed, US West contends, the city asserted a counterclaim against US West for its failure to pay the license fee. In any event, US West argues, the fact remains that the franchise agreement is terminable at any time and, even if not terminated, certainly will expire of its own terms shortly, thus subjecting the company to the license fee requirement of the ordinance.

US West is correct that it is certainly odd for the city to have attempted to enforce the license requirement in the trial court only to argue, when that proved unsuccessful, that the claim was not justiciable in the first place. Nevertheless, justiciability is a matter of the constitutional authority of the court and may be raised for the first time on appeal. *Barcik v. Kubiaczyk,* 321 Or 174, 186, 895 P2d 765 (1995) (court may consider justiciability issues for the first time on appeal). Having said that, we conclude, for the reasons set forth in *AT&T Communications*, that a provider currently operating under a franchise that is set to expire shortly may challenge the validity of the ordinance that will apply upon expiration. 177 Or App at 385-86.

On the merits, the city contends that the trial court erred in concluding that the telecommunications ordinance is preempted by any of the state or federal laws on which US West relies. US West, in turn, contends that the trial court was correct, because the ordinance is preempted by each of those state and federal laws.

In *AT&T Communications*, we addressed and rejected arguments that the city's ordinance is preempted by, among other things, ORS 307.215, ORS chapter 759, and 47

USC § 253(a). We reject US West's arguments concerning those statutes, as well.

In this case, US West asserts only one ground for preemption that is not disposed of by our decision in *AT&T Communications*, namely, that the registration and license fees violate ORS 221.515 as applied to a telecommunications utility. We turn to the parties' arguments about that statute.

ORS 221.515 provides, in part:

"(1)  The council of every municipality in this state may levy and collect from every telecommunications carrier operating within the municipality * * * a privilege tax for the use of those streets, alleys or highways, or all of them, in such municipality in an amount which may not exceed seven percent of the gross revenues of the telecommunications carrier currently earned within the boundaries of the municipality. * * *

"(2)  As used in this section, 'gross revenues' means those revenues derived from exchange access services * * * less net uncollectibles from such revenues.

"(3)  A telecommunications carrier paying the privilege tax authorized by this section shall not be required to pay any additional fee * * * to the municipality for its use of public streets, alleys, or highways, or all of them, and shall not be required to pay any additional tax or fee on the gross revenues that are the measure of the privilege tax."

According to US West, the city's telecommunications ordinance violates that statute in two ways. First, EC § 3.415(2) exacts a right-of-way tax that is a percentage of a different—and broader—revenue stream than the statute allows. Second, EC § 3.415(1) exacts a two-percent registration fee in addition to a seven-percent right-of-way fee, which amounts to a total fee of nine percent of a provider's gross annual revenues, in violation of the seven-percent limit stated in ORS 221.515(3).

The city concedes that the statute limits the revenue stream on which its seven-percent license fee may be calculated. It also concedes that the statute limits the revenues on which it may exact its two-percent registration fee. According to the city, its ordinance anticipates both of those problems

and authorizes it to charge only what the state statute allows. That does not mean that the ordinance is invalid, the city insists. For the reasons that follow, we agree with the city.

■     We begin with the seven-percent right-of-way license fee. At the outset, we note that ORS 221.515 applies to US West—unlike a number of other telecommunications service providers that have challenged the city's ordinance—because it is a "telecommunications carrier" within the meaning of that statute. *See AT&T Communications*, 177 Or App at 387-88 ("telecommunications carrier" as used in ORS 221.515 refers to a "telecommunications utility"). The statute imposes a cap on local government right-of-way license fees equal to seven percent of "gross annual revenues," defined as revenues derived from exchange access services less net uncollectibles from such revenues.

■     The city's ordinance imposes a seven-percent fee but on a revenue stream that is not limited either to exchange access service revenues or to such revenues less net uncollectibles. As we have observed, however, the ordinance also anticipates that state or federal law may limit the types of fees that may be collected from telecommunications service providers and declares that, to the extent that there are such limits, "nothing in this section shall require the payment of any greater amount." EC § 3.415(4). Because the ordinance expressly limits the amount of the right-of-way fee that the city may exact from a "telecommunications carrier" to what ORS 221.515 provides, there is no conflict between the ordinance and state law.

US West ignores the effect of EC § 3.415(4). Its brief includes not a single reference to that portion of the ordinance, much less an explanation of why, in light of that limitation on the license fee, ORS 221.515 requires invalidation of it in its entirety. Instead, the company devotes its briefing to excoriating the city for attempting to enforce the broader license fee requirement when it knew that it could not lawfully do so. US West understandably is exasperated that, notwithstanding EC § 3.415(4), the city at first attempted to collect from US West more than ORS 221.515 permitted and even alleged a counterclaim for the company's failure to pay.

The fact remains that the city has since abandoned that counterclaim and now concedes that it cannot collect more than ORS 221.515 permits.

■ We turn to the two-percent license fee. ORS 221.515(3) provides that local governments cannot require telecommunications carriers to pay "any additional tax or fee on the gross revenues" that are used to calculate the right-of-way tax that is permitted under ORS 221.515(1). In other words, local governments cannot impose any additional taxes on the gross revenues derived from exchange access services less net uncollectibles from those services. The city's telecommunications ordinance requires telecommunications service providers to pay a registration fee equal to two percent of gross revenue from any telecommunications activities in the city—not just exchange access services—without a deduction for net uncollectibles. Once again, however, EC § 3.415(4) provides that, to the extent that state law limits the fees that the city may exact from a telecommunications service provider, no such fees can be collected.

■ That means that, with respect to the registration fee, there can be no additional tax on the gross revenues that already are the basis for the right-of-way license fee. It does not mean, however, that the city cannot impose a two-percent tax on *other revenues*, that is to say, revenues generated from services other than exchange access services. Thus, the statute again limits the authority of the city to collect a tax, but it does so in a manner that is expressly accommodated by the language of the city's ordinance. There is no conflict between the two.

US West insists that the city is not authorized to impose a tax on nonexchange access services. It argues that, by expressly permitting municipalities to impose taxes on exchange access services, the legislature implicitly intended to eliminate the authority of those municipalities to tax any other services. We rejected similar arguments in *AT&T Communications*, 177 Or App at 387-91, and do so in this case for the reasons set forth in that opinion.

The city's telecommunications ordinance does not violate any of the state or federal statutes on which US West relies. It follows that the trial court erred in allowing US

West's summary judgment motion and in denying the city's motion.

Reversed and remanded for entry of judgment in favor of City of Eugene.