Argued and submitted September 4, decision of the Court of Appeals is affirmed in part and vacated in part; judgment of the circuit court is reversed in part and vacated in part December 18, 2003

## US WEST COMMUNICATIONS, INC.,
*Petitioner on Review,*

*v.*

## CITY OF EUGENE,
an Oregon municipal corporation,
*Respondent on Review.*

(CC 16-98-01463; CA A105859; SC S49254)

81 P3d 702

David R. Goodnight, of Dorsey & Whitney LLP, Seattle, Washington, argued the cause for petitioner on review. On the briefs were Lawrence Reichman, Elizabeth Schwartz, and Julia E. Markley, of Perkins Coie LLP, Portland.

Jerome S. Lidz, of Harrang Long Gary Rudnick P.C., Eugene, argued the cause for respondent on review. With him on the briefs were William F. Gary and Linda J. Kessell.

KISTLER, J.

**KISTLER, J.**

The primary question this case presents is whether a city may impose more than a seven percent privilege tax on telecommunications carriers. We agree with the Court of Appeals that it may. We disagree, however, with the Court of Appeals' decision to reach a subsidiary issue—whether the statutes governing the Public Utility Commission (PUC) preempt cities from regulating telecommunications carriers. Accordingly, we affirm the Court of Appeals decision in part and vacate it in part.

US West Communications, Inc. (US West), which is now known as Qwest, provides telecommunications services within the City of Eugene. Since 1990, US West has operated under the terms of a franchise agreement between the city and US West's predecessor.[1] That agreement, which expires in 2005, requires US West to pay the city seven percent of the revenues derived from US West's exchange access service less net uncollectibles in return for the "privilege [of] engag[ing] in a general communications business using the public [rights of] way."

In 1997, the city amended the Eugene City Code (ECC) to regulate telecommunications activities within the city. Among other things, the city imposed a two percent annual registration fee on any person "engag[ing] in any telecommunications activity through a communications facility located in the city." ECC § 3.405(1); ECC § 3.415(1). The city also required persons who "construct, place or locate any [telecommunications] facility in, upon, beneath, over or across any public right of way" to pay an annual seven percent license fee.[2] ECC § 3.410(1); ECC § 3.415(2). Because US West engages in telecommunications activities within the

---

[1] If certain conditions are met, a city either may enter into a franchise agreement that determines the "charges and fees upon which any public utility * * * may be permitted to occupy the streets, highways or other public property within such city," ORS 221.420(2), or may impose a privilege tax "for the [utility's] use of [the] streets, alleys or highways" within the city, ORS 221.450.

[2] A telecommunications facility "includes radio transmitting towers, other supporting structures, and associated facilities, including fiber, used to transmit telecommunications signals." ECC § 3.005.

city, the city sought to recover the two percent registration fee in addition to the seven percent franchise fee.

In response, US West brought this action for declaratory and injunctive relief. Among other things, US West sought a declaration that ORS 221.515 bars the city from collecting both the two percent registration fee and the seven percent franchise fee.[3] ORS 221.515(1) authorizes municipal governments to levy and collect

> "from every telecommunications carrier operating within the municipality and actually using the streets, alleys or highways, or all of them, in such municipality for other than travel, a privilege tax for the use of those streets, alleys or highways * * * in an amount which may not exceed seven percent of the gross revenues * * * earned within the boundaries of the municipality."

ORS 221.515(2) defines "gross revenues" as "revenues derived from exchange access services * * * less net uncollectibles."[4] Finally, ORS 221.515(3) provides that

> "[a] telecommunications carrier paying the privilege tax authorized by this section shall not be required to pay additional compensation or consideration * * * to the municipality for its use of public streets, alleys, or highways * * *, and shall not be required to pay any additional tax or fee on the gross revenues that are the measure of the privilege tax."

On cross-motions for summary judgment, the trial court ruled that ORS 221.515 prevents the city from recovering both the two percent registration fee and the seven percent franchise fee from US West. The Court of Appeals reversed. *US West Communications v. City of Eugene*, 177 Or App 424, 431-32, 37 P3d 1001 (2001). It recognized that ORS 221.515 places two limits on a city's ability to impose a tax or fee on telecommunications carriers[5] but held that the city's registration fee does not run afoul of either limitation.

---

[3] US West also sought a declaration that ORS chapter 759 prevents the city from imposing certain regulatory requirements on telecommunications carriers. We discuss that claim below.

[4] Exchange access service is essentially basic local telephone service. Nonexchange access service includes long distance, call waiting, and similar services.

[5] The court held, and no one disputes, that US West is a "telecommunications carrier" within the meaning of ORS 221.515. 177 Or App at 430.

The court began by recognizing that ORS 221.515 distinguishes between two types of revenue: revenue derived from exchange access services and revenue derived from nonexchange access services. 177 Or App at 430-31. Under ORS 221.515(3), "[a] telecommunications carrier * * * shall not be required to pay any additional tax or fee" on revenues derived from exchange access services. The registration fee is consistent with that limitation, the court reasoned, because the city imposes the fee solely on revenue derived from nonexchange access services. *Id.*[6]

The court recognized that ORS 221.515 imposes a second limitation on cities—no city may impose more than a seven percent tax on telecommunications carriers for the privilege of using the city's public rights-of-way. ORS 221.515(3). The court explained that its decision in *AT&T Communications v. City of Eugene*, 177 Or App 379, 390-91, 35 P3d 1029 (2001), *rev den*, 334 Or 491 (2002), resolved whether the city's registration fee ran afoul of that limitation. *US West Communications*, 177 Or App at 431. In *AT&T Communications*, the court explained that the city had not imposed the registration fee to recover for the privilege of using the public rights-of-way, which ORS 221.515 would prohibit. 177 Or App at 390-91. Rather, it had imposed the fee to recover for the privilege of operating within the city without regard to whether a telecommunications carrier used (or did not use) the public rights-of-way. *Id.* Because the registration fee did not come within the scope of the statutory prohibition, the Court of Appeals upheld it.

On review, US West does not challenge the Court of Appeals' first conclusion; that is, US West does not argue that the registration fee violates the statutory prohibition against imposing more than a seven percent tax or fee on revenue derived from exchange access services. It recognizes, as it

---

[6] The Court of Appeals observed that, although the city code defines the registration fee as two percent of an entity's "gross revenues," ECC § 3.415(1), the code also provides that the city may recover the fee only to the extent that it is consistent with state and federal law, ECC § 3.415(4). 177 Or App at 430. Reading those code sections in conjunction with ORS 221.515, the court held that, under the terms of the code, the city may base the registration fee for a telecommunications carrier solely on revenue derived from nonexchange access services. *Id.* at 431. The court noted that, although the city previously had taken a different position, it "now concedes that it cannot collect more than ORS 221.515 permits." *Id.*

must, that the city code, properly interpreted, imposes the registration fee solely on revenue that telecommunications carriers derive from nonexchange access services.

■ US West focuses its arguments instead on the Court of Appeals' second conclusion. In US West's view, ORS 221.515 expressly exempts telecommunications carriers that pay a seven percent privilege tax from paying any additional tax or fee. US West acknowledged at oral argument that ORS 221.515 would not excuse it from paying ad valorem or other general taxes, but it argues that the statute prevents the city from imposing any fee or tax (other than the seven percent privilege tax) on telecommunications carriers for the privilege of operating within the city.[7] The city responds that the Court of Appeals correctly recognized that the limitations that ORS 221.515 places on municipal taxation are narrower than US West contends.

Before turning to the parties' arguments, it is important to clarify the question their arguments present. The question is not whether ORS 221.515 authorizes the city to impose its two percent registration fee. *See Jarvill v. City of Eugene*, 289 Or 157, 169, 613 P2d 1 (1980) (holding that, under the "home rule" provisions of the Oregon Constitution, cities do not need legislative authorization to impose taxes).[8] Rather, the question is whether state or federal law prohibits the city from doing so. *See id.* (stating that proposition). With that question in mind, we turn to the text of ORS 221.515. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (describing methodology for statutory construction).

ORS 221.515(1) authorizes the city to impose a privilege tax on a telecommunications carrier "for the use of [the city's] streets, alleys or highways" and provides that the

---

[7] As noted, US West currently pays a seven percent fee under a franchise agreement that expires in 2005. US West treats the franchise fee as the equivalent of the seven percent license fee under the city code.

[8] *Jarvill* thus signaled a variation on, if not a departure from, the older view, stated without reference to the home rule provisions of the Oregon Constitution, that "the power to tax is not inherent in a municipal corporation"; rather, it is "a delegated authority conferred by the [legislature]." *Eugene Theatre et al. v. Eugene et al.*, 194 Or 603, 617, 243 P2d 1060 (1952).

amount of that tax "may not exceed seven percent" of the carrier's gross revenue, which ORS 221.515(2) defines as "revenues derived from exchange access services * * * less net uncollectibles." ORS 221.515(3) specifically limits a city's ability to tax a telecommunication carrier's revenue. It provides that a telecommunications carrier paying the seven percent privilege tax "shall not be required to pay any additional fee, compensation or consideration * * * to the municipality for its use of public streets, alleys, or highways," nor shall it be required to pay any additional tax or fee on revenues derived from exchange access services.

By its plain terms, ORS 221.515(3) prohibits a city from recovering more than a seven percent tax or fee from a telecommunications carrier for the privilege of using the public rights-of-way. However, that subsection does not prohibit a city from recovering an additional tax or fee for any other activity that a telecommunications carrier might undertake within a city, as long as that tax or fee is based on revenue derived from nonexchange access services. As the Court of Appeals recognized, the specific limitations that ORS 221.515(3) places on municipal taxation are narrower than US West perceives.

US West, however, advances three arguments why the statute's text and context should lead to a different conclusion. In its opening brief, US West recognizes that, read literally, ORS 221.515 limits only the city's ability to recover a privilege tax for the use of public rights-of-way. It reasons, however, that a telecommunications carrier cannot operate without using a city's rights-of-way. It follows, US West reasons, that capping a city's ability to recover a tax for the use of its rights-of-way also caps a city's ability to recover a tax for the privilege of operating within the city.

The legislature, however, did not draw the statute as broadly as US West construes it. In writing ORS 221.515, the legislature focused only on a city's ability to recover a tax for one narrow type of activity, *viz.*, a carrier's use of the city's rights-of-way. The legislature said nothing about a city's ability to tax other business activities that a telecommunications carrier might undertake within the city limits. The legislature legitimately could distinguish those two concepts; that

is, the legislature logically could choose to limit a city's ability to recover a tax for a carrier's use of its streets without also limiting a city's authority to recover other taxes or fees from carriers that do business within the city's borders. We cannot adopt the interpretation of ORS 221.515 that US West urges without rewriting the statute's terms, a task that we cannot undertake. *See PGE,* 317 Or at 611 (explaining that courts may not rewrite statutes to insert what legislature omitted).

US West advances an alternative argument in its reply brief. It notes that ORS 221.515(1) authorizes a city to impose the privilege tax on a "telecommunications carrier operating within the municipality." It follows, US West reasons, that ORS 221.515(1) both authorizes and limits cities to a seven percent tax for the privilege of operating within the city. US West's reading of the quoted wording misperceives the role that wording plays.

The phrase on which US West bases its alternative argument, "operating within the municipality," is a participial phrase that modifies the noun "carrier." It defines the entity on whom a tax may be imposed; it does not define the activities for which the tax may be imposed. Were there any doubt about the matter, the remainder of ORS 221.515 removes it. ORS 221.515(1) states that cities may impose a tax for the privilege of using the city's streets, alleys, and highways; it does not address whether a city may (or may not) impose a tax for the privilege of operating within city limits. ORS 221.515(3) then provides that a carrier may not be required to pay an additional tax "for its use of [a city's] public streets, alleys or highways." We cannot convert that specific limitation into the broader prohibition that US West urges.

■ Finally, US West relies on an uncodified section of the 1989 act of which ORS 221.515 was a part. That uncodified section provides that, on the effective date of the act, "existing franchise fees or privilege taxes shall be superseded by sections 4, 5 and 7 of this Act."[9] Or Laws 1989, ch 484, § 8. However, US West acknowledged in oral argument, and we

---

[9] Sections 4, 5, and 7 of the 1989 act are codified as ORS 221.510, ORS 221.515, and ORS 759.105.

agree, that the legislature did not intend the 1989 act to abrogate all taxes that a city might impose on a telecommunications carrier. Given the specific focus of the text, which is on franchise fees and privilege taxes for the use of city streets, we agree with the city that that provision does not reflect a legislative intent to exempt telecommunications carriers from all municipal taxes and fees other than the seven percent privilege tax. Considered in context, that section does not advance US West's position.

Having examined the text and context of ORS 221.515, we conclude that the legislature's intent is clear. ORS 221.515 does not prohibit the city from recovering its two percent registration fee from telecommunications carriers.

■ US West raises a second issue on review. It argues that, with one exception, ORS chapter 759 gives the PUC exclusive authority to regulate telecommunications carriers. US West acknowledges that the legislature specifically authorized cities and municipalities to "prescribe by ordinance or otherwise, the terms and conditions * * * upon which any telecommunications carrier may be permitted to occupy the streets, highways or other public property within such municipality." ORS 221.510(2).[10] US West argues, however, that some sections of the city code go beyond regulating rights-of-way and intrude into the regulatory area reserved for the PUC. More specifically, US West identifies seven sections of the city's code that, in its view, exceed the city's authority.[11]

---

[10] Consistently, ORS 759.405(4) provides that "[n]othing in this section affects the authority of a city or municipality to manage the public rights of way * * * under * * * [ORS] 221.510 and 221.515."

[11] In its opening brief, US West notes the following seven code sections. First, a licensee may not assign or transfer a license to use the city's streets without the city's prior written approval. ECC § 3.410(8). Second, a licensee that "ceases to operate a communications facility located within the city shall, upon [timely] written request of the city * * *, promptly remove the facility." ECC § 3.425(1). Third, subject to certain exceptions, the city may not issue a permit to cut a street surface "for installation of any utility or facility for a period of five years from the time that the street is constructed or resurfaced." ECC § 7.295(2). Fourth, the code authorizes the city manager to adopt administrative rules. ECC § 3.430. "Such rules may include * * * [c]riteria for determining whether the applicant for a license is financially, technically, and legally qualified to successfully complete any proposed facility to be installed in, on, under or over the public right-of-way." ECC § 3.430(b).

The city responds that, as a general matter, the legislature did not give the PUC exclusive authority over telecommunications carriers. In any event, the city contends that the specific regulations that US West challenges come within the statute permitting cities to "prescribe * * * the terms and conditions * * * upon which any telecommunications carrier may be permitted to occupy the streets, highways or other public property within [a city]." ORS 221.510(2)(a). Although the Court of Appeals reached the merits of this issue, we conclude that it is not appropriate to do so. The issue presents only a hypothetical question and is not ripe for adjudication. *See Oregon Medical Association v. Rawls*, 281 Or 293, 296, 574 P2d 1103 (1978) (recognizing that courts have independent obligation to determine whether issue is justiciable).

As noted, US West identifies seven code sections that, it contends, ORS chapter 759 preempts. Five sections are contingent on the occurrence of an event. Section 3.425(1), for instance, requires a licensee to remove a communications facility if the licensee closes the facility and if the city files a timely request that the facility be removed. US West has not alleged, however, that it has closed or anticipates closing a facility within the city, much less that the city has asked US West to remove such a facility. The remaining two code sections that US West has identified authorize the city manager to adopt administrative rules. One section authorizes the city manager to adopt rules that "may include" criteria for determining whether an operator has sufficient resources to install a telecommunications facility in a public right of way. At least as far as the record reveals, the city manager has not adopted the rule that US West seeks to challenge, nor has US West sought to install a telecommunications facility in a public right of way.

---

Fifth, operators must respond to requests for information from the city, "including requests for information regarding [the operator's] plans for construction, operation and repair." ECC § 3.420(1). Sixth, if a person seeks a permit to perform work affecting a public way, the permit "may require the permittee to install capacity in excess of the permitee's or other providers' needs." ECC § 7.302(4). Finally, the code provides that administrative rules issued by the city manager shall include "[s]tandards that insure initial providers in an area provide extra capacity for later providers" as well as a procedure for initial providers to recover a portion of their costs. ECC § 7.302(6).

■    In determining whether US West's preemption claim is justiciable, we begin with the terms of the declaratory judgment statute. *See Budget Rent-A-Car v. Multnomah Co.*, 287 Or 93, 95, 597 P2d 1232 (1979) (applying that principle); *cf. Leo v. Keisling*, 327 Or 556, 560, 964 P2d 1023 (1998) (stating that courts should decide cases on subconstitutional grounds before reaching constitutional issues). ORS 28.020 authorizes persons whose "rights, status or other legal relations are affected" to seek a declaratory judgment. As the legislature's use of the present tense phrase "are affected" implies, the controversy must involve a dispute based on present facts rather than on contingent or hypothetical events. *See TVKO v. Howland*, 335 Or 527, 534, 73 P3d 905 (2003) (stating that principle); *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982) (same); *Cummings Constr. v. School Dist. No. 9*, 242 Or 106, 110, 408 P2d 80 (1965) (same). In *Cummings Constr.*, the plaintiffs failed to show that their claim was justiciable "because they can point to no existing state of facts which give them present legal rights against the defendant, or an existing state of facts which threatens their legal rights." 242 Or at 110.[12]

US West stands in the same position as the plaintiffs in *Cummings Constr.* It "can point to no existing state of facts that give [it] present legal rights against the [city], or an existing state of facts which threatens [US West's] legal rights." *Cummings Constr.*, 242 Or at 110. Rather, US West seeks a declaration concerning city code provisions that the city may or may not apply to it in the future. Under the reasoning in *TVKO* and *Cummings*, that is not sufficient. Because US West's claim that ORS chapter 759 preempts various city code provisions is not ripe for adjudication, we vacate the portion of the Court of Appeals' decision addressing that claim.

The decision of the Court of Appeals is affirmed in part and vacated in part. The judgment of the circuit court is reversed in part and vacated in part.

---

[12] In holding that declaratory judgment claims were not justiciable, the court has not always specified whether its decision rested on a subconstitutional or on a constitutional basis. We base our decision today solely on statutory grounds.