385 F.3d 1236
 QWEST CORPORATION, a Colorado corporation, Plaintiff-Appellant,
v.
CITY OF PORTLAND, an Oregon municipal corporation, Defendant-Appellee,
City of Happy Valley; City of Keizer; City of North Plains; City of Pendleton; City of Redmond; City of Salem; City of Eugene; City of Springfield; City of Ashland, Defendants-Intervenors-Appellees.
 No. 02-35473.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 3, 2003.
 Filed October 12, 2004.
 
 Appeal from the United States District Court for the District of Oregon; John Jelderks, Magistrate Judge, Presiding. D.C. No. CV-01-01005-JE.
 David Goodnight, Stoel Rives LLP; Seattle, WA, Yana D. Koubourlis, Dorsey & Whitney LLP, Seattle, WA; Patrick Lynch, Emily Brubaker, O'Melveny & Myers LLP, Los Angeles, CA; Roy Adkins, Qwest Corporation, Denver, CO, for plaintiff-appellant Qwest Corporation.
 Jeffery L. Rogers, Portland City Attorney, Harry Auerbach, Deputy City Attorney, Portland, OR; Nicholas Miller, Joseph Van Eaton, William Malone, Miller & Van Eaton, P.L.L.C, Washington, DC, for defendant-appellee City of Portland.
 Pamela J. Beery, Paul C. Elsner, Berry Elsner & Hammond, LLP, Portland OR; Kenneth A. Wittenberg, Wittenberg & Pitzer, LLP, Portland, OR, for intervenor cities of Ashland, Happy Valley, Keizer, North Plains, Pendleton, Redmond, Salem, and Springfield.
 William F. Gary, Jerome Lidz, Linda J. Kessel, Harrang Long Gary Rudnick P.C., Eugene, OR, for intervenor city of Eugene.
 Before ALARCON, FERGUSON, and RAWLINSON, Circuit Judges.
 Opinion by Judge Rawlinson; Concurrence by Judge Ferguson.
 RAWLINSON, Circuit Judge:
 
 
 1
 Qwest Corporation (Qwest), a telecommunication provider, appeals the district court's summary judgment in favor of the City of Portland and other Oregon cities (Cities), who intervened in the action. Qwest contends that the Federal Telecommunications Act of 1996(FTA), 47 U.S.C. § 253, preempts the municipal ordinances pursuant to which the franchise fees were assessed. The district court ruled that the Cities' ordinances and various franchise agreements were not preempted by the FTA.[1] The district court also determined that the revenue-based fees imposed on the telecommunication providers by the Cities were valid under the FTA. Because the district court failed to conduct an individualized § 253 preemption analysis for each city's ordinances, and misapplied our holding in City of Auburn v. Qwest, 260 F.3d 1160 (9th Cir.2001), we must remand the case to the district court for additional consideration. Because the district court correctly concluded that Qwest's challenge to the Cities' gross revenue-based fees was barred by claim and issue preclusion, that ruling is affirmed.
 
 I.
 
 BACKGROUND
 
 
 2
 In 1932, the Portland City Council issued a revocable permit to the Pacific Telephone and Telegraph Company to use the city's public rights-of-way to provide telecommunications services. In 1961, Pacific Telephone and Telegraph Company transferred the permit to Pacific Northwest Bell Telephone Company (PNWB). U.S. West Communications succeeded to PNWB's interests, and Qwest eventually acquired U.S. West.[2]
 
 
 3
 In 1989, Qwest lobbied for adoption of a separate privilege tax for incumbent local telecommunications carriers in exchange for their use of the rights-of-way. The Oregon legislature subsequently enacted ORS §§ 221.505 to 221.515, which authorized Oregon cities to assess incumbent local telecommunications carriers fees of up to 7% of gross revenues. In response to this legislation, the Cities entered into nonexclusive agreements with Qwest, allowing Qwest to use the public rights-of-way. In exchange for this privilege, Qwest agreed to pay the Cities a fee equal to 7% of gross revenues earned within the Cities' boundaries.[3]
 
 
 4
 Some ten years later, the city of Portland notified Qwest that it was revoking Qwest's long-standing permit to use its public right-of-way. The parties entered into unfruitful negotiations for a new permit. In the interim, the city of Portland issued Qwest a temporary revocable permit (TRP) allowing Qwest to continue to use its public right-of-way.
 
 
 5
 Qwest brought this action seeking a declaration that Portland's franchise and telecommunications ordinances are invalid under § 253 of the FTA. Nine other cities intervened and filed counterclaims seeking past-due franchise fees. Following the filing of cross-motions for summary judgment, the district court granted summary judgment to all ten cities, holding that Qwest had failed to show that the Cities' revenue-based right-of-way fees, or other franchise requirements, prohibited or had the effect of prohibiting Qwest's provision of telecommunication services under § 253. Qwest Corp. v. City of Portland, 200 F.Supp.2d 1250, 1253-54, 1256-59 (D.Or.2002). The court also ruled that the FTA did not categorically prohibit cities from basing public rights-of-way fees on a company's gross revenues, rather than on actual costs for use of local rights-of-way. Id. at 1256-57. Finally, the court determined that Qwest's action against the city of Eugene was barred by the doctrine of claim preclusion and that issue preclusion barred Qwest from challenging the other Cities' revenue-based right-of-way fees. Id. at 1257-58. Even if the Cities' revenue-based fees were presumptively preempted under § 253(a), the district court concluded that the fees would still be valid under the safe-harbor provision of § 253(c), and any preempted provisions could be severed under Oregon law. Id. at 1258-59.
 
 II.
 
 STANDARD OF REVIEW
 
 
 6
 We review the district court's grant of summary judgment de novo. See PLANS, Inc. v. Sacramento City Unified School Dist., 319 F.3d 504, 507 (9th Cir.2003). Viewing the facts in the light most favorable to the nonmoving party, we must determine whether a genuine issue of material fact exists, and whether the district court applied the law correctly. See Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir.2004).
 
 III.
 
 DISCUSSION
 
 
 7
 To resolve this case, we must interpret the FTA, 47 U.S.C. § 253, which provides in part:
 
 
 8
 (a) In general. No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
 
 
 9
 (b) State regulatory authority
 
 
 10
 Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this title, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.
 
 
 11
 (c) State and local government authority
 
 
 12
 Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.
 
 
 13
 47 U.S.C. § 253.
 
 
 14
 Section 253(a) preempts regulations that not only prohibit outright the ability of any entity to provide telecommunications services, but also those that "may ... have the effect of prohibiting the provision of such services." 47 U.S.C. § 253(a). In City of Auburn, we considered whether § 253 preempted local ordinances that established permit processes for telecommunications providers. In discussing § 253 preemption, we noted that "[t]he preemption is virtually absolute and its purpose is clear — certain aspects of telecommunications regulation are uniquely the province of the federal government and Congress has narrowly circumscribed the role of state and local governments in this arena." City of Auburn, 260 F.3d at 1175. Accordingly, cities have "a very limited and proscribed role in the regulation of telecommunications." Id. (citation omitted).
 
 
 15
 To determine whether preemption exists under § 253(a), it is necessary to analyze whether the regulatory scheme "in combination" has "the effect of prohibiting the provision of telecommunications services." City of Auburn, 260 F.3d at 1176. In conducting this analysis in City of Auburn, we examined such factors as the nature of the franchise application process, the requirements to obtain a franchise, the threat of penalties for failure to obtain a franchise, and the discretion the city reserves to grant, deny, or revoke a franchise. Id. ("And, the ultimate cudgel is that each city reserves discretion to grant, deny, or revoke the franchises and the Cities may revoke the franchise if the terms in the ordinance are not followed ..."). In City of Auburn, we held that the combination of features present in the regulatory scheme created "a substantial and unlawful barrier to entry into and participation in the ... telecommunications markets." Id.
 
 
 16
 Qwest challenges the Cities' ordinances in two ways. First, Qwest argues that the Cities' ordinances are similar in scope and substance to those preempted in City of Auburn. As was the case in City of Auburn, Qwest contends that these ordinances, taken as a whole, are preempted by Section 253(a). Qwest also makes a more narrow challenge, asserting that Section 253 prohibits the Cities from basing right-of-way fees on Qwest's gross revenues. In support of this argument, Qwest posits that Section 253 allows local officials to recover only the costs of the use of the right-of-way, rather than to assess fees based on the gross revenues of the telecommunication providers. Each challenge will be discussed separately.
 
 
 A. General Franchise Requirements
 
 
 17
 In analyzing the Cities' franchise requirements generally under § 253(a), the district court ruled that the "franchise agreements and ordinances at issue here do not give the Cities unfettered discretion to deny telecommunications franchisees..." City of Portland, 200 F.Supp.2d at 1256. The court determined that "unfettered discretion" did not exist because some franchise agreements allowed the parties to terminate on 180 days' notice. Id. The court concluded that the requirement that telecommunications service providers submit information about revenues and ownership did not create a barrier to entry into the market or have the effect of prohibiting telecommunications services. Id.
 
 
 18
 The district court's ruling raises several concerns. As an initial matter, we note that there was no individualized analysis of each Cities' challenged ordinances. There are ten Oregon cities involved in this litigation, and each city has unique ordinances that are being challenged by Qwest. The district court's general conclusion that the Cities' franchise agreements and ordinances were not preempted by § 253 is not conducive to effective review on appeal. See Holly D. v. Cal. Institute of Tech., 339 F.3d 1158, 1180 (9th Cir.2003); see also Shawmut Bank, N.A. v. Kress Associates, 33 F.3d 1477, 1504 (9th Cir.1994) (If a trial court's findings of fact are such that it is impossible to determine whether the district court properly applied the law to the facts, the appellate court may remand for more specific findings.") (citation, alteration, and internal quotation marks omitted). We therefore remand for the district court to delineate its findings with regard to each individual city's challenged franchise requirements.
 
 
 19
 We are also concerned about the district court's application of our ruling in City of Auburn, where we stated that "Section 253(a) preempts regulations that not only prohibit outright the ability of any entity to provide telecommunications services, but also those that may have the effect of prohibiting the provision of such services." 260 F.3d at 1175 (citation, alteration, and internal quotation marks omitted); see also Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 2004 WL 1879940, *15 n. 9 (10th Cir. August 24, 2004) ("Section 253(a) bars any legal requirement which may have the effect of prohibiting the ability of an entity to provide telecommunications service."). The district court characterized our interpretation of § 253(a) as misreading "the plain wording of the statute." City of Portland, 200 F.Supp.2d at 1255. The district court reasoned that our interpretation of § 253(a) "implies that the statute bars not only those local requirements that actually prohibit or have the effect of prohibiting the ability to provide telecommunication service, but also those local requirements that may have that effect." Id. The district court disagreed with our interpretation and concluded that § 253(a) preempts challenged requirements only if the requirement "prohibit[s] or [has] the effect of prohibiting the ability of an entity to provide a telecommunications service." Id. at 1255-56. Applying its interpretation of § 253(a), the district court concluded that Qwest had failed to demonstrate that the "Cities' revenue-based right-of-way fees, or other franchise requirements, have barred Qwest's entry into any markets." Id. at 1256. The district court noted that "Qwest has not pointed to a single telecommunications service that it, or any other entity, is effectively prohibited from providing because of the Cities' revenue-based fees or any of the other challenged requirements." Id. (citation omitted).
 
 
 20
 We do not agree that Qwest was required to make an actual showing of "a single telecommunications service that it ... is effectively prohibited from providing." We have previously ruled that regulations that may have the effect of prohibiting the provision of telecommunications services are preempted. Like it or not, both we and the district court are bound by our prior ruling. See Hart v. Massanari, 266 F.3d 1155, 1171, 1175 (9th Cir.2001). In addition, the district court failed to take into consideration the cumulative effect of the Cities' regulatory schemes. See City of Auburn, 260 F.3d at 1176 ("The ordinances at issue in the present case include several features that, in combination, have the effect of prohibiting the provision of telecommunications service.") (emphasis added). The district court's discussion of the Auburn factors was somewhat cursory, leaving us uninformed as to the rationale underlying the court's conclusion, other than its misguided attempt to avoid adhering to binding precedent.
 
 
 21
 Finally, and perhaps most importantly, the district court failed to draw distinction between the Cities' ordinances that are telecommunications-specific and those that are not. In City of Auburn, each of the challenged ordinances specifically addressed the provision of telecommunications services and was adopted after the enactment of the FTA in 1996.[4] 260 F.3d at 1170. Under each ordinance challenged in Auburn, any telecommunications service provider that sought to operate in the city was forced to apply for a franchise. Id. Companies issued a telecommunications franchise were then subject to strict regulations and reporting requirements, and each city expressly reserved the right to exercise its discretion to "grant, deny, or revoke" the telecommunications franchise. Id.
 
 
 22
 In this case, Qwest's challenge to the Cities' ordinances is not nearly as narrow and defined. Qwest's challenge to Portland's ordinances is a prime example. Portland's franchising process is not the result of a single, uniform ordinance regulating telecommunications providers. Rather, the city's franchising process includes a number of provisions adopted over the course of many years and are applicable to utilities generally. Qwest challenges Portland's business license requirements (City Code Chapters 7.12 and 7.14), general franchise requirements that apply to all public utilities (City Charter sections 10-107 and 10-210(d)), and the city's TRP with Qwest (Ordinance No. 175757). Qwest makes a similar challenge to several of Eugene's ordinances.[5]
 
 
 23
 We doubt whether City of Auburn can be read so broadly as to apply to ordinances that are not specific to the telecommunications permitting process. Based on the record before us, there is no indication that Portland or the other Cities, with the exception of Ashland, Eugene, and Springfield, have passed ordinances that are specific to the telecommunications process and apply to all telecommunications providers attempting to enter the market.[6] Therefore, to the extent that Qwest challenges these ordinance provisions, it is questionable whether § 253 even applies.
 
 
 24
 In sum, because the district court failed to conduct an individualized preemption analysis of each city's ordinances, and also misapplied our holding in City of Auburn, we must remand the case to the district court for additional consideration.[7]
 
 
 25
 
 B. Right-of-Way Fees Based on Gross Revenues
 
 
 
 26
 In addition to Qwest's broad challenge to the Cities' ordinances generally, Qwest also advances a more narrow challenge to the Cities' right-of-way fees, based on the provisions of § 253(c). Section 253 retains the authority of a state or municipality to impose a fee "for use of public rights-of-way." 47 U.S.C. § 253(c). For a gross revenue fee to fall within § 253(c), it must constitute "fair and reasonable compensation." Id. Qwest argues that to be "fair and reasonable" such "compensation" must be limited to cost recovery. Qwest predicates its argument on the following language from City of Auburn: "Some non-tax fees charged under the franchise agreements are not based on the costs of maintaining the right-of-way, as required under the Telecom Act." 260 F.3d at 1176. It is far from clear that the quoted language was intended to address the precise issue we now consider: whether a gross revenue fee imposed pursuant to § 253(c) must be cost-based. We need not decide this matter, because the district court rejected Qwest's challenge to the Cities' gross revenue-based fees on the basis of claim and issue preclusion. We agree.
 
 
 27
 In previous litigation, Qwest's predecessor U.S. West challenged the validity of Eugene's telecommunications ordinance, including § 3.415, the portion of the ordinance containing the seven percent gross revenue-based right-of-way fee.[8] See U.S. West Communications, Inc. v. City of Eugene, 177 Or.App. 424, 37 P.3d 1001, 1002 (2001) (stating that U.S. West challenged "the validity of the ordinance and, in particular, the registration and [7%] licensing fee requirements"), aff'd in part and vacated in part, 336 Or. 181, 81 P.3d 702 (2003) (en banc). The Oregon Court of Appeals explicitly ruled that the challenged ordinance was not preempted by 47 U.S.C. § 253(a). Id. at 1004.[9] The district court concluded that the Oregon Court of Appeals' ruling had a preclusive effect, barring further consideration of Qwest's challenge to the telecommunications fees.
 
 
 28
 Qwest now seeks to avoid application of claim preclusion, contending that it challenged only Ordinance 20083 (which included the 7% gross revenue fee) in US West Communications, and is now challenging other portions of Eugene's Municipal Code that were not part of Ordinance 20083.
 
 
 29
 Claim preclusion works to prevent a party who has litigated one action through to a final judgment from bringing another action against the adverse party when the second claim: 1) involves the same parties and the same facts as in the first action, 2) seeks an additional or alternative remedy, and 3) could have been raised in the first action. See Secor Investments, LLC v. Anderegg, 188 Or.App. 154, 71 P.3d 538, 545 (2003).[10]
 
 
 30
 The elements of claim preclusion are met in this case as to Eugene's 7% gross revenue fee on telecommunications providers. The fact that Qwest's current challenge to Eugene's Municipal Code is broader than its previous challenge does not change the reality that Eugene's 7% gross revenue fee was challenged in both cases. It is well settled that claim and issue preclusion apply to state court rulings on federal preemption issues. See Morgan Stanley Mortgage Capital Inc. v. Insurance Comm'r, 18 F.3d 790, 792-793 (9th Cir.1994). The district court properly applied claim preclusion to bar Qwest's challenge to Eugene's revenue-based fee.
 
 
 31
 The doctrine of issue preclusion prevents Qwest from challenging the other Cities' revenue-based right-of-way fees. Issue preclusion bars relitigation of an issue in a subsequent proceeding if five requirements are satisfied: "(1) the issue in two proceedings is identical[;] (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding[;] (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue[;] (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding [;] and (5) the prior proceeding was the type of proceeding to which [a] court will give preclusive effect." Durham v. City of Portland, 181 Or.App. 409, 45 P.3d 998, 1007 (2002) (citation omitted).
 
 
 32
 Qwest contends that issue preclusion should not apply to this case because the issue of the validity of the 7% revenue-based fee was not specifically raised and litigated in the prior proceedings. Qwest also asserts that US West Communications did not incorporate a factual adjudication regarding the revenue-based fee, but simply encompassed a decision on an abstract issue of law. Apparently, both arguments arise from the fact that US West Communications did not articulate explicit reasons for its conclusion that Eugene's telecommunications ordinance was not preempted, but simply referred to its prior opinion in AT & T Communications. Qwest's argument is not persuasive.
 
 
 33
 In US West Communications, the court unambiguously stated that U.S. West was "challenging the validity of the ordinance and, in particular, the registration and licensing fee requirements." 37 P.3d at 1002. The court rejected the notion that Eugene's telecommunications ordinance was preempted by § 253(a) and referred to its decision in AT & T Communications. See id. at 1004. In other words, the court simply adopted the findings and conclusions previously articulated in AT & T Communications. See id. Thus, Qwest's assertion that the US West Communications holding represents a ruling on an abstract question of law is not compelling because in US West Communications, the court indisputably decided the validity of Eugene's gross revenue-based fee vis-a-vis the TCA by incorporating the holding of AT & T Communications.
 
 
 34
 Qwest also argues that applying issue preclusion in this case would be fundamentally unfair. It is true that, in certain situations, it is important for a court to consider whether the application of issue preclusion would result in fundamental unfairness. See State Farm Fire and Cas. Co. v. Century Home Components, Inc., 275 Or. 97, 550 P.2d 1185, 1191 (1976) ("There seems to be something fundamentally offensive about depriving a party of the opportunity to litigate the issue again when he has shown beyond a doubt that on another day he prevailed."). This is not one of those situations.
 
 
 35
 Qwest contends that the holding in US West Communications regarding the revenue-based fee is directly contrary to this court's holding in City of Auburn, and, therefore, applying issue preclusion would foster a fundamentally unfair result. However, Qwest's position is not a fair reading of City of Auburn, which did not address the specific issue of whether a gross revenue-based fee imposed upon telecommunications providers must be cost based. US West Communications and City of Auburn are not inconsistent determinations of the same issue. Accordingly, no unfairness would result if issue preclusion is applied in this case.
 
 
 36
 Finally, Qwest asserts that issue preclusion should not apply because the facts determined in US West Communications regarding Eugene's telecommunications ordinance are not identical to the facts applicable to Portland and the other intervenor cities in this case. However, this argument fails because factual distinctions among the Cities' ordinances is not a factor to be considered in determining issue preclusion. See Durham, 45 P.3d at 1007 (listing factors to be considered in determining if issue preclusion applies).
 
 
 37
 In sum, the validity of Eugene's revenue-based right-of-way fees was litigated in US West Communications. Qwest has not presented a persuasive argument against the application of issue preclusion in this case. Therefore, the Cities are entitled to rely on the doctrine of issue preclusion to avoid challenges to the Cities' revenue-based right-of-way fees.
 
 IV.
 
 CONCLUSION
 
 
 38
 Because the district court failed to conduct an individualized § 253 preemption analysis of each city's ordinances, and misapplied our ruling in City of Auburn, we remand the case to the district court for additional consideration. The district court properly held that Qwest's challenge to the Cities' gross revenue-based fees was barred by claim and issue preclusion. Accordingly, the judgment of the district court is reversed and remanded as to the § 253 preemption claim and affirmed as to the revenue-based fees claim.
 
 
 39
 REVERSED in part, AFFIRMED in part and REMANDED. Each party will bear its costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 The parties consented to resolution by a magistrate judge
 
 
 [2]
 Reference to Qwest in this opinion encompasses Qwest's predecessors, including U.S. West and PNWB
 
 
 [3]
 The City of North Plains imposed a 4% revenue-based fee
 
 
 [4]
 In fact, an examination of the cases discussing preemption under § 253 reflects that telecommunications-specific ordinances enacted after 1996 are generally the subject of reviewSee e.g. TCG New York, Inc. v. City of White Plains, 305 F.3d 67, 71 (2d Cir.2002) (telecommunications-specific ordinance enacted in 1997); BellSouth Telecom., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1175 (11th Cir.2001) (telecommunications-specific ordinances enacted in 1997); New Jersey Payphone Ass'n., Inc. v. Town of West New York, 299 F.3d 235, 237 (3d Cir.2002) (telecommunications-specific ordinance enacted in 2000); Qwest Comm. Corp. v. City of Berkeley, 255 F.Supp.2d 1116, 1118 (N.D.Cal.2003) (telecommunications-specific ordinance enacted in 2000); Qwest Corp. v. City of Santa Fe, 224 F.Supp.2d 1305, 1309 (D.N.M.2002) (telecommunications-specific ordinance enacted in 1998).
 
 
 [5]
 Qwest challenges at least six general Eugene Code provisions that are not telecommunications-specificSee Eugene Mun.Code § 3.015 — authorizing the city manager to adopt rules for the administration of city business licenses; Eugene Mun.Code § 3.020 — providing general application procedures for business licensees; Eugene Mun.Code § 3.025 — setting forth legal requirements for license approval; Eugene Mun.Code § 3.045 — authorizing the city to impose an administrative civil penalty for violations of Chapter 3 of the code; Eugene Mun.Code § 3.050 — authorizing the city to deny or revoke a license if the licensee violates relevant code provisions or conditions.
 
 
 [6]
 Ashland, Eugene, and Springfield have enacted telecommunications-specific ordinances post-1996, and each city's telecommunications ordinance regulates the franchise process. Qwest has not challenged Eugene's telecommunications ordinance (Eugene Ordinance 20083) in this appeal
 
 
 [7]
 If the district court finds that any of the Cities' ordinances are preempted by § 253(a), it must also consider whether the preempted ordinance provisions fall within the savings clause of § 253(c)See City of Auburn, 260 F.3d at 1177.
 
 
 [8]
 In light of Qwest's status as successor to U.S. West, the parties in this case are the same as those in the earlier caseSee Stevens v. Horton, 161 Or.App. 454, 984 P.2d 868, 872-73 (1999). ("Nonparties to prior adjudications whose rights can realistically be said to have been protected in those proceedings tend to fall into one of three categories: (1) those who control an action though not a party to it; (2) those whose interests are represented by a party to the action; and (3) successors in interest to those having derivative claims.") (emphasis added) (citations omitted); see also Russell v. SunAmerica Securities, Inc., 962 F.2d 1169, 1174 (5th Cir.1992) (suggesting that a claim by a successor corporation is a derivative claim).
 
 
 [9]
 In so ruling, the Court of Appeals relied upon its prior decision inAT & T Communications v. City of Eugene, 177 Or.App. 379, 35 P.3d 1029, 1032-34 (2001).
 
 
 [10]
 In determining the preclusive effect of a state court judgment, we "must apply the [preclusion] rules of the state that rendered the underlying judgment."Zamarripa v. City of Mesa, 125 F.3d 792, 793 (9th Cir.1997).
 
 
 FERGUSON, Circuit Judge, concurring specially:
 
 40
 I concur to remand this case to District Court for additional consideration as to whether each individual city ordinance at issue is preempted by § 253 of the Federal Telecommunications Act of 1996(FTA). In so doing, however, the District Court must consider whether the Cities' ordinances in whole or in part survive preemption under the safe harbor provisions of the FTA, particularly § 253(c). See City of Auburn v. Qwest, 260 F.3d 1160, 1177 (9th Cir.2001). The District Court must also determine whether individual provisions of a particular city ordinance that might be found to be preempted by § 253 of the FTA can be severed from the remaining provisions of the ordinance that might not be found to be preempted. See Auburn, 260 F.3d at 1180.